Antonio Javier GONZALEZ,
Plaintiff–Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Defendant–Appellant.

No. 25203.

Missouri Court of Appeals,
Southern District,
Division Two.

June 18, 2003.

Jeremiah W. (Jay) Nixon, Atty. Gen., Patrick T. Morgan, Asst. Atty. Gen., Jefferson City, for appellant.

Robert E. Childress, Springfield, for respondent.

NANCY STEFFEN RAHMEYER, Chief Judge.

Missouri's Director of Revenue ("Director") appeals the judgment of the trial court reinstating the driving privileges of Antonio Javier Gonzalez ("Respondent"). Respondent's license had been revoked pursuant to § 577.041[1] for his alleged refusal to submit to a chemical test to determine his blood alcohol concentration.[2] Director claims the judgment is against the weight of the evidence, unsupported by substantial evidence, and an erroneous application of the law. *See* Rule 84.13(d).[3] We reverse the trial court's judgment of reinstatement.

---

**1.** All references to statutes are to RSMo 2000, unless otherwise indicated.

**2.** Section 577.041 reads in pertinent part:

If a person under arrest, or who has been stopped pursuant to subdivision (2) or (3) of subsection 1 of section 577.020, refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding pursuant to ... section 577.012. The request of the officer shall include the reasons of the officer for requesting the person to submit to a test and also inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test. If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If upon the completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal. In this event, the officer shall, on behalf of the director of revenue, serve notice of license revocation personally upon the person and shall take possession of any license to operate a motor vehicle issued by this state which is held by that person.

**3.** All rule references are to Supreme Court Rules (2003), unless otherwise indicated.

On the evening of December 8, 2001, Missouri State Highway Patrol Trooper Jason Pace ("Pace") stopped Respondent after Respondent failed to use his signal when turning and crossed the centerline twice. When Pace spoke with Respondent, he noted "a moderate odor of intoxicants coming from and about his person." Pace and Respondent "carried on [a] normal conversation" in which Respondent did not ask Pace to repeat himself or otherwise indicate he did not understand Pace. Pace arrested Respondent for driving while intoxicated and took Respondent to the Greene County Jail.

While at the jail, Pace read the Implied Consent Warning to Respondent. As Respondent "was beginning to take the [breathalyzer] test he began to state he did not understand." Pace called Missouri State Highway Patrol Trooper Joe Boix ("Boix") and requested that Boix give the Implied Consent Warning to Respondent in Spanish.[4] After Respondent spoke to Boix, Respondent told Pace that he would take the breath test and "began to blow," but he stopped and asked to speak with an attorney. Pace gave Respondent twenty minutes and access to a telephone to contact an attorney, but Respondent made no phone calls during the twenty-minute period. At the end of the time, Pace reread the Implied Consent Warning and asked Respondent if he understood the warning and would take a test; Respondent replied that he would not.

■ Respondent's driver's license was revoked pursuant to § 577.041, and Respondent filed a petition for review in the trial court. The trial court set aside the revocation and reinstated Respondent's driver's license. This appeal follows.[5]

■ This court will affirm a trial court's reinstatement of driving privileges that have been revoked for refusing to consent to a chemical test unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Sutton v. Director of Revenue*, 20 S.W.3d 918, 920–21 (Mo.App. S.D.2000). The issues in a post-revocation hearing are limited to (1) whether the person was arrested or stopped; (2) whether the officer had reasonable grounds to believe the person was operating a motor vehicle while in an intoxicated or drugged condition; and (3) whether the person refused to submit to the test. *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002). Once these three questions have been answered, the inquiry ends. *Id.* The director has the burden of proof at the hearing. *Id.* If the trial court finds any issue not to be in the affirmative, it shall order the director to reinstate the license. *Id. See also* § 577.041.5.

---

4. Apparently, Boix was unable to testify at the trial because he is no longer with the Missouri State Highway Patrol and lives out of state. Thus, the trial court excluded any testimony Pace gave regarding the conversation that occurred between Respondent and Boix as impermissible hearsay.

5. Respondent filed a Motion to Dismiss this appeal and asserts there is no final judgment from which Director may appeal. This motion is denied. Judgment was entered in this case on January 9, 2003. The judgment became final thirty days after it was entered pursuant to Rule 81.05(a)(1). Respondent's argument that the docket entry of September 4, 2002, is the judgment of the case fails because that docket entry does not meet the definition of a judgment given in Rule 74.01(a) and, therefore, is an order. Rule 74.02. Thus, the only appealable judgment in this case is the judgment entered on January 9, 2003, and the notice of appeal filed by Director on September 30, 2002, is premature, but permissible, under Rule 81.05(b).

■ The trial court concluded that "without the testimony of Trooper Boix, the court cannot find that [Respondent] understood Missouri's Implied Consent Warning." To establish a prima facia case, Director must show only that the person was arrested or stopped, the officer had reasonable grounds to believe the person was operating a motor vehicle while in an intoxicated or drugged condition, and the person refused to submit to the test. *Hinnah*, 77 S.W.3d at 620. At trial, Respondent stipulated that Respondent was arrested and that Pace had reasonable grounds to arrest Respondent for driving while intoxicated. Thus, the only issue left for us to determine is whether the Director established a prima facie case that Respondent refused to submit to a chemical test of his blood alcohol concentration.[6]

A refusal has been defined as follows:

There is no mysterious meaning to the word "refusal." In the context of the implied consent law, it simply means that an arrestee, after having been requested to take the breathalyzer test, declines to do so of his own volition. Whether the declination is accomplished by verbally saying, "I refuse," or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal.

*Spradling v. Deimeke*, 528 S.W.2d 759, 766 (Mo.1975).

■ A driver who has been advised of his rights under the Implied Consent Law, but declines to take the test, is deemed to have refused the test unless he objectively and unequivocally shows he does not understand his rights and the warning concerning the consequences of refusal and, thereafter, he was denied clarification. *Id.* "A lack of understanding not made apparent to the officer is of no consequence." *Id.* (quoting *State of Washington, Department of Motor Vehicles v. Riba*, 10 Wash. App. 857, 520 P.2d 942, 945 (1974)).

While both parties focus on whether Respondent understood the warnings given in English by Pace and allegedly given in Spanish by Boix, such a question is beyond the scope of our inquiry. Rather, we are concerned only with whether Respondent refused to take the test and, in the event he did not understand his rights and the warning concerning the consequences of refusal, whether Respondent clearly and unequivocally communicated his lack of understanding to Pace.

After being read the warning in English by Pace, Respondent agreed to take the test. As Respondent started to take the test, he said, without specification, only that he did not understand. To ensure Respondent understood the warning, Pace requested that Boix give the warning to Respondent in Spanish. After Respondent spoke to Boix, he again agreed to take the test. The second time he began to take the test, he stopped and requested to contact an attorney. At the end of the twenty-minute period wherein he was allowed to contact an attorney as he had requested, Pace reread the warning to Respondent and asked if he would take the test. Without further explanation, Respondent said he would not.

If Respondent did not understand the warning or the consequences of refusing the test, he had an affirmative duty to inform Pace of his lack of understanding.

6. Respondent presented no evidence at trial. Thus, Director's evidence was uncontradicted, and the credibility of the officer was unchallenged. *See Simmons v. Director of Revenue*, 3 S.W.3d 897, 902 (Mo.App. S.D.1999.)

*See Baldridge v. Director of Revenue,* 82 S.W.3d 212 (Mo.App. W.D.2002). Nothing in the record suggests that, after the final reading of the warning, Respondent said any more to Pace than that he would not take the test.

Respondent argues this case is similar to *Kisselev v. Director of Revenue,* 97 S.W.3d 538 (Mo.App. S.D.2003). That case, however, is not applicable to this situation. While *Kisselev* did involve a language barrier, the trial court concluded that the driver "did not unequivocally refuse to submit to a chemical test." *Id.* at 540. The driver attempted to take the test twice, but was unable to give a valid result because he did not understand the directions of the officer. *Id.* at 539–40. In fact, the driver requested to take the test again, but the officers declined. *Id.* at 540. This court affirmed the trial court's findings that the driver did not "intentionally act to subvert the test and, thus, did not refuse to take the test." *Id.* at 541. Such is not the case before us today. Respondent stated that he would not take the test when Pace asked the final time. Such a clear and unequivocal response cannot be considered anything but a refusal under § 577.041.

Inasmuch as Respondent was advised of his rights, received an adequate warning as to the consequences of refusal, and declined to take the chemical test, we find that this constituted a refusal under the Implied Consent Law sufficient to revoke his driving privileges pursuant to § 577.041. Therefore, the judgment of the trial court is reversed, and we remand for reinstatement of the revocation of Respondent's driving privileges.

PARRISH, J., and SHRUM, J., concur.