John P. BROWN,
Petitioner/Respondent,

v.

DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent/Appellant.

No. ED 84749.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 24, 2005.

---

1. Defendant's motions to dismiss and for sanctions are denied.

Sidney A. Thayer, Jr., Politte & Thayer, Washington, MO, for respondent.

Nicole L. Loethen, Asst. Atty. Gen., Jefferson City, MO, for appellant.

KATHIANNE KNAUP CRANE, Judge.

The Director of Revenue (Director) appeals from the trial court's judgment reinstating the driving privileges of petitioner, John P. Brown, after judicial review of the revocation based on his refusal to submit to a chemical test under section 577.041 RSMo (2000).[1] We reverse and remand.

In the early morning hours on February 11, 2004, Trooper Jeffrey Gertsen of the Missouri State Highway Patrol responded to an accident scene on Highway 50, east of Danz Road in Gasconade County. When he arrived at the scene, he observed a black Dodge Dakota pickup truck that had rolled over several times in a ditch on the north side of the road. He saw several beer cans lying in the area of the accident.

Trooper Gertsen made contact with the driver of the vehicle, the petitioner, who was in the back of the ambulance, strapped to a backboard. He identified himself and told Trooper Gertsen that he had hit some black ice and wrecked. Trooper Gertsen observed that petitioner's breath had a strong odor of intoxicants and that his speech was slurred. He noticed that petitioner's eyelids were swollen and his eyes were bloodshot, but his pupils were normal. He had an oxygen mask, but it was not on.

Trooper Gertsen asked petitioner exactly what happened, and petitioner told him that he could speak to his attorney. Trooper Gertsen asked petitioner for his address, to which he replied, "You know what, you can talk to my lawyer." At this point, petitioner put his oxygen mask over his face and closed his eyes. Trooper Gertsen asked petitioner if he could hear him, and petitioner ignored the officer's question.

Trooper Gertsen informed petitioner that he was under arrest and advised him of his *Miranda* rights and the implied consent law warning, which included a request that he submit to a blood test to determine his blood alcohol content. Petitioner's eyes were closed while the officer

---

1. Petitioner has not filed a respondent's brief.

administered the *Miranda* warnings and implied consent law warning. However, petitioner then opened his eyes and said he was not going to take any of the tests.

Petitioner again opened his eyes and said, "Sir, I was just taking my friend home. I wasn't doing anything wrong." When Trooper Gertsen asked petitioner if he had been drinking, petitioner stated, "Sir, I've been drinking, but I'm more worried about my friend." Petitioner closed his eyes again.

Trooper Gertsen asked petitioner for a blood sample to determine his blood alcohol content. Petitioner ignored the question. Trooper Gertsen testified that petitioner appeared to be unconscious at the time he asked petitioner to take a blood test. Trooper Gertsen told the ambulance technician that petitioner looked unconscious and asked the ambulance technician to take a sample of petitioner's blood. Trooper Gertsen testified that he made this statement to the ambulance technician in order to "jar" petitioner, "to see if he was actually unconscious." Petitioner then opened his eyes and said he wasn't going to be taking any tests.

When the ambulance technician subsequently tried to start an IV in petitioner's arm, petitioner told the technician "not to stick him with that f'ing needle" or he would sue him. Trooper Gertsen told petitioner he was not going to request a test because petitioner had already refused. He did not ask petitioner to take any other chemical tests. Petitioner was taken to a hospital in Washington, Missouri, but he refused to be admitted.

Trooper Gertsen completed an Alcohol Influence Report. In the Implied Consent section he put an "X" in the "NO" box next to the question, "will you take the test(s)." He also put an "X" in the box "CHEMICAL TEST REFUSAL," which the officer is required to mark if the subject refused the test. He wrote "REFUSED" in the box for blood alcohol concentration.

As a result of petitioner's refusal to submit to a chemical test, Director revoked petitioner's license for one year beginning on February 27, 2004, pursuant to section 577.041 RSMo (2000). On February 20, 2004, petitioner filed a Petition to Review Revocation of Driver's License pursuant to section 577.041 RSMo (2000).

At trial, Director offered into evidence a certified copy of her records, which included the Alcohol Influence Report and the arresting officer's narrative, and called Trooper Gertsen to testify. Petitioner cross-examined Trooper Gertsen and called one witness, his father, Paul Brown. Petitioner's father testified that when he picked up petitioner at the hospital, petitioner had a scrape from his eye to his ear, blood was running out of one ear and out of both corners of his eyes, glass was stuck to his ear, and petitioner was disoriented. Petitioner told his father that his head hurt and he wanted to go home to his own bed.

The trial court entered a judgment setting aside Director's order revoking petitioner's driving privileges, based on its finding that:

> because of petitioner's injuries, it is unlikely that petitioner could have refused to take the chemical test and it is unlikely that petitioner was given the Implied Consent warning as the officer testified petitioner ignored him when he gave petitioner the Miranda and Implied Consent. The officer further testified that it appeared Brown was unconscious when he requested Brown to give a blood sample. Petitioner has sustained his burden of proof that he did not refuse to submit to a chemical test.

Director appeals.

For his sole point on appeal, Director contends that the trial court erred in re-

versing the revocation of petitioner's license because Director made a prima facie case of refusal under section 577.041, which petitioner did not rebut.

 In an appeal from a judgment reinstating driving privileges under section 577.041, we affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or the trial court erroneously declares or applies the law. *Hinnah v. Director of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We defer to the trial court's determinations of credibility. *Hinnah*, 77 S.W.3d at 620. "If the evidence is uncontroverted or admitted so that the real issue is a legal one as to the legal effect of the evidence, then there is no need to defer to the trial court's judgment." *Id.*

 Section 577.014.4 allows a person whose license has been revoked to request a hearing before a court in a county in which the arrest occurred. At the hearing, the Director must establish a prima facie case that (1) the petitioner was arrested or stopped; (2) that the arresting officer had reasonable grounds to believe that the petitioner was driving a motor vehicle in an intoxicated condition; and (3) that the petitioner refused to submit to the test. Section 577.041.4; *Hinnah*, 77 S.W.3d at 620. Director has the burden of proof. *Id.* If the trial court finds any issue not to be in the affirmative, it must order Director to reinstate the license. Section 577.041.5; *Hinnah*, 77 S.W.3d at 620. Once Director establishes a prima facie case for revocation, petitioner may rebut Director's case by a preponderance of the evidence. *Hamor v. Director of Revenue, State*, 153 S.W.3d 869, 872 (Mo.App.2004). Director argues that she established a prima facie case and that petitioner did not rebut it.

1. *Arrest or Stop*

 Director must establish that petitioner was arrested or stopped. Section 577.041.4(1). "Arrest" is defined as "an actual restraint of the person of the defendant, or by his submission to the custody of the officer, under authority of a warrant or otherwise." Section 544.180. Merely informing a person that he or she is under arrest is not enough absent proof of physical restraint or submission to authority. *Smither v. Director of Revenue*, 136 S.W.3d 797, 799 (Mo. banc 2004). However, further physical restraint is impractical and unnecessary if the person is already physically immobilized or incapacitated. *Id.*

Here, Trooper Gertsen told petitioner that he was under arrest and advised him of his *Miranda* rights and the implied consent law warnings while petitioner was strapped to a backboard in the back of an ambulance. Although the officer did not physically restrain petitioner, further physical restraint was not required to constitute a lawfully effectuated arrest in light of the fact that petitioner was already strapped to a backboard when the officer told him he was under arrest. *Id. See also Saladino v. Director of Revenue*, 88 S.W.3d 64, 69 (Mo.App.2002). Director made a prima facie case that petitioner was under arrest within the meaning of section 577.041.4(1).

2. *Reasonable Grounds to Believe That Petitioner was Driving While Intoxicated*

 Director must also establish that the arresting officer had reasonable grounds to believe that petitioner was driving while intoxicated. Section 577.041.4(2)(a). "Reasonable grounds" is virtually synonymous with "probable cause" for arrest for driving while intoxicated. *Hinnah*, 77 S.W.3d at 620. "Prob-

able cause to arrest for driving while intoxicated exists when a police officer observes an unusual or illegal operation of a motor vehicle and observes indicia of intoxication upon coming into contact with the motorist." *Newsham v. Director of Revenue*, 142 S.W.3d 207, 209 (Mo.App.2004) (quoting *Rain v. Director of Revenue*, 46 S.W.3d 584, 587 (Mo.App.2001)). A probable cause determination is fact-dependent. *Newsham*, 142 S.W.3d at 209–10. "There is a 'vast gulf' between the quantum of information necessary to establish probable cause and the quantum of evidence required to prove guilt beyond a reasonable doubt." *Rain*, 46 S.W.3d at 588. The court examines the situation through the eyes of a cautious, trained, and prudent officer at the time of arrest, in determining whether reasonable grounds exist. *Id.* at 587.

Trooper Gertsen established that petitioner was the driver of a vehicle that had overturned in a one-vehicle accident. He smelled a strong odor of intoxicants on petitioner's breath at the accident scene. He noticed that petitioner's eyes were bloodshot and his speech was slurred. Further, petitioner told the officer that he had been drinking.

■ The odor of alcohol and slurred speech are both indicia of intoxication. *Clark v. Director of Revenue*, 132 S.W.3d 272, 275–76 (Mo.App.2004); *Rain*, 46 S.W.3d at 588. In this case, the officer observed a one-vehicle accident, established that petitioner was driving, and observed that petitioner exhibited indicia of intoxication. Director made a prima facie case that the officer had reasonable grounds to believe that petitioner was driving while intoxicated. *See Berry v. Director of Revenue*, 885 S.W.2d 326, 328 (Mo. banc 1994).

3. *Refusal*

■ Last, Director must establish refusal under section 577.041.4(3). Director argues that petitioner did not produce evidence at the hearing that he was unconscious at the time Trooper Gertsen read the implied consent law warning and asked him to submit to a blood test. The trial court's finding that it was unlikely that petitioner was given the implied consent law warning because petitioner ignored the officer while he was giving the warning and because he appeared unconscious when the officer asked for a blood sample is not supported by substantial evidence and misapplies the law.

■ An arresting officer's narrative combined with the Alcohol Influence Report constitutes sufficient evidence of a refusal to submit to a chemical test. *Lyons v. Director of Revenue*, 36 S.W.3d 409, 411 (Mo.App.2001); *Marsey v. Director of Revenue*, 19 S.W.3d 176, 178 (Mo. App.2000). In this case, there was substantial evidence from the officer's testimony and the Alcohol Influence Report that the officer read the implied consent law warning to petitioner and petitioner voiced his refusal to take a chemical test several times. Director adduced sufficient evidence of refusal to make a prima facie case. *See Lyons*, 36 S.W.3d at 411; *Winston v. Director of Revenue*, 137 S.W.3d 502, 506 (Mo.App.2004).

■ We next consider whether petitioner rebutted this evidence with evidence that he was unconscious when he was given the implied consent law warning. There was no evidence that a reasonable person would have concluded that petitioner was unconscious when the officer read the implied consent law warning or requested a blood test. As with his other conversations with the officer at the time, petitioner's statements refusing to take the test were coherent, lucid, logical, and con-

textually appropriate. His statements indicated that he had heard the warning and the request. His verbal responses to the officer's comments and requests were uncontroverted. Petitioner's sole witness did not testify that petitioner was unconscious at any time he saw him. Petitioner's injuries do not lead to the conclusion that petitioner had been unconscious at the time the implied consent law warning was read. There were no medical records supporting a conclusion that petitioner was unconscious at that time. Unlike the driver in *Nace v. Director of Revenue*, 123 S.W.3d 252, 257 (Mo.App.2003), petitioner did not adduce any evidence that he was injured to the point that he was incapable of refusing to submit to the test.

A reasonable person would have perceived petitioner's actions as a refusal. Under these circumstances, no substantial evidence supported the trial court's conclusion that petitioner was unconscious when he was given the implied consent law warning or when he refused to take the test. *See Berry*, 885 S.W.2d at 327–28. The trial court's conclusion that the implied consent law warning was not given to petitioner because petitioner ignored the warning and "appeared" to be unconscious, when he was not, misapplied the law.

We reverse and remand the cause to the trial court to enter a judgment reinstating the revocation of petitioner's driving privileges.

PATRICIA L. COHEN, P.J. and ROBERT G. DOWD, JR., J., concur.