Bradley Dewayne WEST, Petitioner–
Respondent,

v.

DIRECTOR OF REVENUE, STATE of
Missouri, Respondent–Appellant.

No. SD 29490.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 17, 2009.

Chris Koster, Atty. General, Jonathan H. Hale, for Appellant.

Richard A. Skouby, St. James, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

The Director of Revenue ("Appellant") revoked the driver's license of Bradley Dewayne West ("Respondent") for one year after he refused to submit to a chemical test pursuant to section 577.041 [1] to determine his blood alcohol content following a motor vehicle accident. Finding "all issues in favor of [Respondent]," the trial court determined that "[Respondent] was medically unable to make a decision under Section 577.041," and reversed the revocation of Respondent's license. Appellant claims on appeal that the trial court's decision was not supported by substantial evidence, was against the weight of the evidence, and misapplied the law.[2] We reverse.

At approximately 10:34 p.m., on January 25, 2008, Corporal Steven Childers of the Missouri State Highway Patrol ("the patrolman") responded to a report of a single-vehicle accident on a county road in Phelps County. When he arrived on the scene, he found Respondent's truck badly damaged and sitting in a ditch, with Respondent receiving treatment from emergency medical personnel. The patrolman questioned four people at the scene who had driven by shortly after the accident, but had not witnessed it. According to one of the individuals, upon their arrival, the four found Respondent sitting in a ditch. The four individuals also informed the patrolman that Respondent smelled of alcohol and had told them that he had not been driving at the time of the accident.

An emergency medical technician later informed the patrolman that Respondent told him "Dave" had been driving. Upon inspection of the interior of the truck and surrounding areas, the patrolman and other emergency responders were unable to locate anyone else at the scene.

Once Respondent left the scene in an ambulance, the patrolman conducted a more thorough inspection of the truck; he found blood on the outside passenger-side door handle, the passenger window shattered but held in place by window tint film, the entire front windshield shattered, the steering wheel "pushed completely against the rear of the driver's seat," "no blood inside the truck at all," the contents of the cab strewn about, and an open beer bottle "contained a small amount of liquid and it was cold to [the] touch." Following his inspection, the patrolman went to Phelps County Regional Medical Center ("the hospital"), where Respondent was taken for treatment.

Upon his arrival at the hospital, the patrolman encountered Joy West, the wife of Respondent, in the emergency room waiting area. He asked Mrs. West if she knew "Dave" and she responded that she knew a "Dave" but did not know his last name. When the patrolman asked her how she knew "Dave," she replied that she had gone to grade school with him. The patrolman informed Mrs. West that he "was having difficulty with the story," and she "became upset and stated, 'I'm not lying!'" The patrolman went on to explain that if "David" was driving, he may himself be injured and require medical attention.

1. All references to statutes are to RSMo Cum. Supp.2005, and all rule references are to Missouri Court Rules (2009), unless otherwise specified.

2. Respondent did not submit a brief, nor was he required to do so. See Estate of Klaas v. Brown, 8 S.W.3d 906, 908 (Mo.App. S.D. 2000). While we will not penalize Respondent for choosing not to submit a brief, we regret that our resolution of this appeal will be without the benefit of Respondent's version of the case. Id.

Mrs. West did not respond to that statement and the patrolman left the waiting room. The patrolman could not investigate the existence of "Dave" because no one would provide any further information.

When the patrolman entered treatment room four at 12:49 a.m. on January 26, 2008, where Respondent was awaiting transfer to University Medical Center in Columbia, Missouri, he detected a strong odor of intoxicants emanating from Respondent. While in the room with Respondent, the patrolman observed that Respondent's face and hands were covered in dried blood, his right eye was bandaged, his left eye was "bloodshot and glassy," and that Respondent spoke in a slurred, mumbling manner. The patrolman asked Respondent what happened during the accident, and Respondent said he did not remember. When asked who was operating the truck at the time of the accident, Respondent replied, "I don't remember who was driving." In response to further questioning, Respondent stated that he had not been ejected from the truck, and that he did not remember how he got out, only that he did.

The patrolman then informed Respondent that he had reason to believe that Respondent had been operating the truck during the accident and asked him to submit to a series of field sobriety tests. Respondent refused. At that time, the patrolman placed Respondent under arrest for driving while intoxicated based on his observations and the circumstances surrounding the accident. Following the arrest, the patrolman advised Respondent of the Missouri implied consent law pursuant to section 577.020 and requested that he submit to a blood test. Respondent replied, "no." The patrolman then read Respondent his *Miranda*[3] rights and Respondent stated that he understood his legal

rights. The patrolman then asked Respondent a series of questions from the Alcohol Influence Report (A.I.R.) form.

According to the A.I.R., during the interview Respondent answered questions regarding his occupation, when he last worked and when he last slept, and admitted drinking "probably six" beers between 6:00 and 8:00 the evening of the accident. When asked if he had consumed any alcoholic beverages since the accident, Respondent answered, "I've been here." The patrolman ended the questioning when he asked Respondent if he was under the influence of alcohol and Respondent replied, "I'm done answering questions." After the interview, Respondent was transported to University Medical Center for further treatment.

That same day, Appellant issued Respondent a notice that his driver's license would be revoked for one year. Respondent availed himself of the right to have the revocation reviewed in the circuit court pursuant to section 577.041. At the review hearing, Appellant relied on the testimony of the patrolman and offered a certified copy of the Notice of Revocation and the A.I.R. as evidence. Respondent did not offer any rebuttal evidence or testimony, but was granted leave to file medical records with the court at a later time. The patrolman's testimony set forth the facts as stated above and Respondent later filed medical records with the court. After reviewing the records, the court found all issues in favor of Respondent, determined he had been medically unable to refuse to submit to testing, and ordered Appellant to reinstate Respondent's driver's license.

At a revocation hearing, the court below determines three issues: (1) whether the person was stopped or arrest-

---

**3.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ed; (2) whether the law enforcement officer had reasonable grounds to believe that the person was driving a motor vehicle in an intoxicated state; and (3) whether the person refused to submit to a chemical test. *Hinnah v. Director of Revenue,* 77 S.W.3d 616, 620 (Mo. banc 2002) (citing Section 577.041.4). This Court will overturn the judgment of the court below if there is no substantial evidence to support it, it is against the weight of the evidence, or the court erroneously declared or applied the law. *Id.* There is no requirement that a refusal be knowing; where there is no evidence in the record to support a finding that a person did not objectively refuse to take a test, a trial court's finding to the contrary is unsupported by substantial evidence and must be reversed. *Fick v. Director of Revenue,* 240 S.W.3d 688, 691 (Mo. banc 2007).

█ Here, the court resolved all issues in favor of Respondent. The fact that Respondent was arrested was uncontested, so we turn to the issue of whether the record supports a finding that the patrolman lacked reasonable grounds to believe Respondent was driving while intoxicated. The relevant inquiry is not whether Respondent was actually driving, but whether the patrolman had reasonable grounds to believe he was doing so in an intoxicated condition. *Hinnah,* 77 S.W.3d at 621–22. " 'Reasonable grounds is virtually synonymous with probable cause.' " *Id.* at 620 (quoting *Hawkins v. Director of Revenue,* 7 S.W.3d 549, 551 (Mo.App.E.D.1999)). Probable cause exists where an officer's knowledge of the facts and circumstances is sufficient to lead a prudent person to believe a suspect has committed an offense. *Guhr v. Director of Revenue,* 228 S.W.3d 581, 585 n. 3 (Mo. banc 2007).

The record demonstrates that the patrolman had ample reason to believe Respondent was driving while intoxicated.

The patrolman arrived on the scene of a single-vehicle accident and found Respondent to be the only one receiving treatment. Upon further search of the surrounding area, the patrolman and other emergency responders were unable to locate anyone else whom may have been involved. Upon inspection of the truck, the patrolman found blood on the outside of the passenger-side door handle, but no blood in the passenger compartment, and the passenger-side window shattered but intact. In addition, the steering wheel was pressed against the back of the driver's seat. This information led the patrolman to believe that the driver must have been ejected from the vehicle, and being unable to find any other accident victims, that Respondent must have been driving. Respondent's wife did not provide any helpful information that might be used to locate the supposed driver, which also gave the patrolman reason to believe Respondent had been driving. While the record contains testimony from the patrolman and information in the patrolman's report that no one witnessed Respondent driving and that Respondent claimed someone else had been driving at the time of the accident, that evidence does not refute the patrolman's probable cause to believe otherwise.

The patrolman also had probable cause to believe that Respondent was intoxicated while driving. Upon arriving at the scene, four passers-by informed him that Respondent smelled of alcohol. Inspection of the truck revealed an open beer bottle with a small amount of liquid that was cold to the touch. When the patrolman entered Respondent's hospital room, he immediately detected a strong odor of intoxicants, and observed that Respondent's left eye was bloodshot and glassy, and that his speech was mumbling and slurred. Respondent then refused a field sobriety test, and was placed under arrest. Given these facts,

the record does not support a finding that the patrolman lacked reasonable grounds to believe Respondent had been driving while intoxicated. We do not believe the trial court found the facts to be any different, even though the court found "all issues in favor of [Respondent]."

■ We now turn to the issue of whether the lower court's finding that Respondent did not refuse to submit to a chemical test was a misapplication of the law. There is absolutely no question that Respondent said "no" when asked to submit to a chemical test. Respondent did not testify, nor was there any evidence contradicting the officer's testimony that Respondent verbally refused to take the chemical test. These facts distinguish this case from *Nace v. Director of Revenue*, 123 S.W.3d 252 (Mo.App. W.D.2003), where "extensive evidence" supported the trial court's finding that the officer's testimony was not credible. *Id.* at 258. Because Respondent did not file a brief, we are left to assume he would argue that the trial court found he was not capable of refusing the chemical test. We must determine whether Respondent's answer of "no," despite his injuries, constituted a refusal under section 577.041.

In *Cartwright v. Director of Revenue*, 824 S.W.2d 38 (Mo.App. W.D.1991), Cartwright argued that the lower court believed that he did not remember refusing to submit to testing and was therefore incapable of refusing. *Id.* at 39–40. The court held that a refusal is not required to be knowing, and that an officer "is entitled to take a refusal at face value without being required to determine the person's mental capacity to make such [a] decision." *Id.* at 41. The court further noted that Cartwright's credibility argument had no merit because Cartwright did not testify that he did not refuse to submit to a test. *Id.* at 40.

In *Berry v. Director of Revenue*, 885 S.W.2d 326 (Mo. banc 1994), Berry argued he was not physically able to refuse to submit to a chemical test due to his injuries and, therefore, had not refused it. *Id.* at 327. Because the only evidence on the record was testimony from Berry and a law enforcement officer, the Supreme Court held that the case was indistinguishable from *Cartwright* and applied the objective test. *Id.* at 327–28. The court affirmed this rule in *Fick v. Director of Revenue*, 240 S.W.3d 688 (Mo. banc 2007). Fick sought to rebut a law enforcement officer's testimony that Fick's answers to questions from emergency personnel were not inappropriate and did not demonstrate a lack of understanding by testifying that he did not remember any events at the scene of the accident. *Id.* at 691. Again, the court applied the objective test and found there was no evidence that Fick did not refuse the test, and that the lower court's decision was, therefore, not based on substantial evidence because the only relevant evidence was the testimony of the law enforcement officer. *Id.*

In *Brown v. Director of Revenue*, 164 S.W.3d 121 (Mo.App. E.D.2005), Brown argued that the Eastern District of this Court was bound to the lower court's finding that Brown was incapable of refusing to submit to a test because Brown cross-examined the law enforcement officer and presented testimony from his father that he was injured. *Id.* 124–25. The court found nothing in the record that would lead a reasonable person to conclude that Brown was unconscious at the time he was asked to submit to a chemical test, stating

[h]is statements indicated that he had heard the warning and the request. His verbal responses to the officer's comments and requests were uncontroverted. Petitioner's sole witness did not testify that petitioner was unconscious

at any time he saw him. Petitioner's injuries do not lead to the conclusion that petitioner had been unconscious at the time the implied consent law warning was read. There were no medical records supporting a conclusion that petitioner was unconscious at that time. Unlike the driver in [*Nace*], petitioner did not adduce any evidence that he was injured to the point that he was incapable of refusing to submit to the test. A reasonable person would have perceived petitioner's actions as a refusal.

*Id.* at 127. Lacking any evidence on the record to support the finding that Brown was unconscious at the time the chemical test was requested, the court reversed. *Id.*

Our review of the evidence indicates there was nothing to contradict the evidence from the officer that Respondent refused the test and that Respondent was not unconscious at the time of the refusal. The only other evidence we could find which could possibly be used to determine that Respondent was incapable of refusing to submit to testing came from the medical records. According to medical records, Respondent suffered a fractured left forearm, ligament damage to his right knee, a head injury resulting from a piece of wood penetrating the orbit of his right eye and extending into the right frontal lobe of his brain, and numerous other abrasions. The records also indicate that Respondent was "talking and alert" at the scene of the accident, was alert and oriented immediately following the patrolman's A.I.R. interview, and was assessed a Glasgow Coma Score of 15 upon his arrival at each hospital, which is the highest possible score on the Glasgow Coma Scale.

We find that the most recent decisions of our Supreme Court provide that an objective test is used to determine whether Respondent refused to submit to testing. There is nothing in the record that demonstrates that Respondent did not, nor does it provide grounds for a reasonable person to perceive his actions as anything but a refusal. Appellant presented evidence that Respondent refused to submit to a chemical test in the form of the patrolman's testimony and the A.I.R. Respondent later filed medical records as evidence that Respondent did not refuse. The patrolman testified that Respondent seemed alert and coherent and, therefore, capable of refusing the test. Nothing in the medical records controverts that testimony. In fact, the records corroborate the patrolman's testimony that Respondent was alert and aware when he refused to submit to the test.

Under *Cartwright,* the patrolman was entitled to rely on Respondent's refusal without determining his mental capacity to give it, so we will not ask a law enforcement officer to reevaluate the person's mental capacity after a refusal when he is under no duty to evaluate it in the first place.[4] Nothing in the record up to the time Respondent refused to submit to testing suggests that Respondent was unconscious or otherwise rendered incapable of refusal; therefore, the evidence that Respondent was alert and coherent is unrebutted.

While we defer to the court below on determinations of credibility, credibility was not at issue at the hearing or in the judge's subsequent review of Respondent's

---

4. We note that had Respondent immediately changed his mind after refusing, the patrolman would be entitled to rely on the refusal without evaluating subsequent conduct to determine if he actually meant it, *Blanchard v.* *Director of Revenue,* 844 S.W.2d 589, 590–91 (Mo.App. E.D.1993); a rule requiring an officer to evaluate conduct subsequent to a refusal to determine whether the person had the capacity to refuse would be incongruous.

medical records. The patrolman did not testify that Respondent was not injured in the manner described by the records, and nothing in the records indicates that the patrolman was incorrect in his assessment of Respondent's ability to refuse. The relevant evidence consists of the patrolman's testimony that Respondent refused his request, and medical records indicating that Respondent was alert and coherent despite suffering substantial injuries. The trial judge based his finding that Respondent was medically incapable of making the decision to refuse testing on the evidence of Respondent's extensive injuries, even though no evidence was introduced to show that those injuries rendered Respondent incapable in the eyes of a reasonable person. Because no evidence indicates that Respondent's injuries rendered him incapable, the only relevant evidence on the record regarding the refusal was the patrolman's testimony. Thus, Respondent's medical ability to make a decision under section 577.041 is immaterial to the issue of whether Respondent objectively refused to submit to a chemical test under that section. The trial court misapplied the law when it relied upon Respondent's subjective medical inability to refuse, regardless of the officer's testimony of Respondent's objective manifestations of refusal. Appellant's point is granted.

The judgment is reversed and the cause remanded with directions to enter judgment affirming the action of Appellant in revoking the driver's license of Respondent for one year.

SCOTT, C.J., concurs in part and in result in separate opinion.

LYNCH, P.J., concurs.

DANIEL E. SCOTT, Chief Judge, concurring in part and in result.

I agree that the trial court misapplied the law. A driver's lack of understanding not made apparent to the officer "is of no consequence." *Spradling v. Deimeke*, 528 S.W.2d 759, 766 (Mo.1975); *Laney v. Dir. of Revenue*, 144 S.W.3d 350, 354 (Mo.App. 2004); *Baldridge v. Dir. of Revenue*, 82 S.W.3d 212, 222 (Mo.App.2002). As this court has noted:

> A driver who has been advised of his rights under the Implied Consent Law, but declines to take the test, is deemed to have refused the test unless he objectively and unequivocally shows he does not understand his rights and the warning concerning the consequences of refusal and, thereafter, he was denied clarification. A lack of understanding not made apparent to the officer is of no consequence. [citation and quotation marks omitted].

*Gonzalez v. Dir. of Revenue*, 107 S.W.3d 491, 494 (Mo.App.2003).

Refusal is determined by an objective test; there is no requirement that the refusal be knowing. *Fick v. Dir. of Revenue*, 240 S.W.3d 688, 691 (Mo. banc 2007). Rarely should courts evaluate a refusal *post hoc*.[5] "Rather, we are concerned only with whether [the driver] refused to take the test and, in the event he did not understand his rights and the warning concerning the consequences of refusal, whether

---

5. I find no indication of record that Respondent "had been unconscious at the time the implied consent law was read" or otherwise while the investigating officer was at the hospital. *See Brown v. Dir. of Revenue*, 164 S.W.3d 121, 127 (Mo.App.2005), which distinguishes *Nace v. Dir. of Revenue*, 123 S.W.3d 252 (Mo.App.2003) on that basis. Indeed, post-*Nace* cases uniformly have declined to follow that decision. *See Beach v. Dir. of Revenue*, 188 S.W.3d 492, 496 (Mo.App.2006); *Rogers v. Dir. of Revenue*, 184 S.W.3d 137, 143 n. 6 (Mo.App.2006); *Brown*, 164 S.W.3d at 127.

[he] clearly and unequivocally communicated his lack of understanding" to the officer. *Gonzalez,* 107 S.W.3d at 494.

In *Fischbeck v. Dir. of Revenue,* 91 S.W.3d 699 (Mo.App.2002), the driver argued that non-medical factors "affected his decisional process and diminished his ability to make an informed choice as to whether to submit to the test." *Id.* at 702. The trial court agreed, but the Eastern District reversed:

> If Driver was confused or did not understand his rights based upon the functioning of the breathalyzer, he should have expressed his confusion to the officer. A driver who has been advised of his rights under the Implied Consent Law, but declines to take the test, is deemed to have refused the test unless he objectively and unequivocally shows he does not understand his rights and the warning concerning the consequences of refusal and, thereafter, he was denied clarification. *Spradling v. Deimeke,* 528 S.W.2d 759, 766 (Mo.1975); *Duffy v. Dir. of Revenue,* 966 S.W.2d 372, 382 (Mo.App.1998).
>
> "A lack of understanding not made apparent to the officer is of no consequence." *Spradling,* 528 S.W.2d at 766; *Duffy,* 966 S.W.2d at 382.

*Id.* We repeated these quoted statements in *Gonzalez,* 107 S.W.3d at 494.

The officer here was "entitled to take a refusal at face value without being required to determine the person's mental capacity to make such decision." *Cartwright v. Dir. of Revenue,* 824 S.W.2d 38, 41 (Mo.App.1991). I would reverse on this ground alone, without discussing the Director's arguments about the sufficiency or weight of the evidence. I think the case law on those issues is not wholly consistent in refusal cases, and whatever we say here on those matters may be dicta.