Jeremey Antonio CARDENAS,
Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. SD 30454.

Missouri Court of Appeals,
Southern District,
Division One.

April 14, 2011.

Chris Koster, Atty. Gen., and Jonathan H. Hale, Asst. Atty. Gen., Jefferson City, MO, for Appellant.

No brief filed for Respondent.

ROBERT S. BARNEY, Presiding Judge.

This appeal involves the judicial review of the revocation of Jeremey Antonio

Cardenas's ("Driver") driving privileges by the Director of Revenue ("the Director") pursuant to section 577.041 for refusing to submit to a breath analysis test.[1] Subsequent to Driver's filing of his petition for review and following a hearing, the trial court ordered reinstatement of Driver's driving privileges and the Director appealed.[2]

At the hearing held on September 3, 2009, Officer Jennifer Hicks ("Officer Hicks"), a police officer with the police department of St. Robert, Missouri, testified that at approximately 12:30 a.m. on May 31, 2009, she was dispatched to the McDonald's restaurant parking lot in reference to an automobile accident that "had just occurred." She related that upon arrival she "observed two vehicles ... a silver pickup and a passenger car" and "there were two subjects standing behind the passenger car." Officer Hicks recounted that both subjects indicated they did not have insurance and Driver indicated he had been driving the silver pickup. When asked what had happened, Driver told Officer Hicks that he "was pulling in [the parking lot]. [He] bumped [the other vehicle]. That's it." As she was talking with Driver she "could tell that his eyes were very watery, very strong odor of intoxicants coming from his breath. His speech was slurred, and he was swaying as he was standing there." After observing there was no damage to either vehicle,

Officer Hicks requested Driver take a seat in her patrol car so "that [she] could talk to him more, because [she] did suspect that he may be impaired." Once in the vehicle she performed the "Alphabet Test and the Count–Down Test. [She] asked him to get out of the vehicle and conducted the ..." horizontal gaze nystagmus ("HGN") test during which she observed "all six points of nystagmus, as well as vertigo...." She explained that the "points" observed during the test indicated "there [wa]s an amount of depressant or inhalant or a dissociative [substance], which, alcohol is categorized as a depressant" in Driver's system. She also "attempted to [conduct] the Walk–and–Turn Test, but it was stopped. And [she] did not do the One Leg Stand Test." When Officer Hicks asked Driver if he had been drinking, Driver indicated that he "had four or five beers" although he did not give her a timetable for his consumption of those beers. After her observations were concluded, Officer Hicks "believed [Driver] was impaired by alcohol ... to such a degree that he was not able to operate a vehicle;" she informed Driver that he was under arrest for driving while intoxicated; she handcuffed Driver; and transported him to the police station. Officer Hicks stated that "[a]t 54 minutes after midnight ..." she read Driver the implied consent form[3] at which time Driver indicated he "wanted to talk to an attorney. So [Offi-

**1.** Unless otherwise stated, all statutory references are to RSMo Cum.Supp.2009.

**2.** Driver did not file a responsive brief in this matter. Although we do not have the benefit of his input, he was not required to do so. *West v. Dir. of Revenue*, 297 S.W.3d 648, 650 n. 2 (Mo.App.2009).

**3.** Section 577.020.1(1), RSMo Cum.Supp. 2007, provides in pertinent part that

[a]ny person who operates a motor vehicle upon the public highways of this state shall

be deemed to have given consent to ... a chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood ... [i]f the person is arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition....

cer Hicks] gave him a cell phone and a phone book." Then,

> [a]t 1:17, so that's 22 minutes later, [she] read him the implied consent again. He did not appear to have been paying attention. He was just looking down at the floor, and [she] read the implied consent again. After each of the parts of the implied consent, [she] asked if he understood. Each time he said he did. After [she] finished, [she] asked if he would take a breath test, and he said no.

While Driver's attorney engaged in cross-examination of Officer Hicks and objected to the receipt into evidence of the Director's proposed "Exhibit 1," he did not offer any evidence at the hearing.

The trial court's judgment, in pertinent part, reads as follows:

> [u]pon the evidence offered ... adjudged and adduced, the [trial] court finds [the Director] failed to show by *competent* and *admissible* evidence the

time of the accident, the elapsed time between [the] accident and [Officer Hicks's] encounter with [Driver], whether or not [Driver] consumed alcohol after the accident and whether or not [Officer Hicks] had reasonable grounds to believe [Driver] was driving a motor vehicle while in an intoxicated condition. (Emphasis supplied).

Accordingly, the trial court reinstated Driver's driving privileges. This appeal by the Director followed.

■ In her sole point relied on, the Director asserts the trial court erred in reinstating Driver's driving privileges "because it erroneously declared and applied the law, in that the Director's evidence ..." presented through the testimony of Officer Hicks and the Director's certified records "was competent, admissible, and sufficient to show that [Officer Hicks] had reasonable grounds to believe [Driver] was driving while intoxicated."[4]

---

4. In the argument portion of her brief, the Director points to the evidence set out in her records. The following colloquy occurred at the hearing on the issue of the Director's submitted records:

> Counsel for the Director: I will offer the Missouri Department of Revenue certified record of the—of their documents to the Court at this time, your Honor.
> Counsel for Driver: What are you marking it as?
> Counsel for the Director: Sorry. [The Director's] Exhibit 1.
> The Court: Any objection at this point?
> Counsel for Driver: Well, I object that it's not properly certified, your Honor. It constitutes hearsay and not true business records. The Court: I obviously haven't seen it. I'm not sure that it—that's one of those objections that is made based on the content, but I haven't seen the content.
> Counsel for Driver: That's one of those objections often made and rarely sustained, Judge.
> The Court: All right. I have to at least look at the exhibit to determine whether or not it's admissible, and I'm looking at the certification pursuant to [section] 302.312.

> Counsel for Driver: Judge, if you want to [t]ake my objection with the case, that's fine.
> The Court: I will [d]o so.

In reviewing the record submitted to this Court, it appears that the trial court never expressly ruled on the record as to the admissibility of the Director's Exhibit 1. There is no mention of a ruling in the transcript; there is no notation in the docket sheets; and there is no statement in the judgment to that effect. Further, no copy of this exhibit has been separately filed with this Court, although there is a copy of certified records denoted as "Exhibit A" in the legal file prepared by the Director. However, we infer from the trial court's judgment that it considered Exhibit 1 since it took the matter with the case, but rejected this evidence as not being competent and therefore inadmissible.

In this connection, we note that

> [c]opies of all papers, documents, and records lawfully deposited or filed in the offices of the department of revenue or the bureau of vital records of the department of health and copies of any records, properly certified by the appropriate custodian or the director, shall be admissible as evidence

On appeal, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, the judgment is against the weight of the evidence, or the trial court erroneously declared or applied the law. *White,* 321 S.W.3d at 307–08.[5] In contested cases, such as the present matter, "the nature of the appellate court's review is directed by whether the matter contested is a question of fact or law."[6] *Id.* "When the facts relevant to an issue are contested, the reviewing court defers to the trial court's assessment of the evidence." *Id.* at 308.

"This Court must uphold the revocation of [a] driver's license if the revocation statute's requirements under section 577.041.4 were satisfied." *Ross v. Dir. of Revenue,* 311 S.W.3d 732, 735 (Mo. banc 2010). Section 577.041 provides that the only three issues to be decided at a post-revocation hearing are: (1) that the person was arrested, (2) that the officer had reasonable grounds[7] to believe that the person was driving while intoxicated, and (3) that the person refused to submit to the test. *See Fick v. Dir. of Revenue,* 240 S.W.3d 688, 690–91 (Mo. banc 2007). "A finding that any one of these criteria has not been met requires reinstatement of driving privileges." *Sullins v. Dir. of Revenue,* 893 S.W.2d 848, 849 (Mo.App.1995).

As already stated, the Supreme Court of Missouri, in *White,* 321 S.W.3d at 308–09, recently clarified the standard of review in contested cases:

> [w]hen evidence is contested by disputing a fact in any manner, this Court defers to the trial court's determination of credibility. A trial court is free to disbelieve any, all, or none of that evidence. Appellate courts defer to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record. The appellate court's role is not to re-evaluate testimony through its own perspective. Rather, the appellate court confines itself to de-

---

in all courts of this state and in all administrative proceedings.
*Thomas v. Dir. of Revenue,* 74 S.W.3d 276, 278 (Mo.App.2002) (quoting § 302.312(1), RSMo.2000). It is our view that while the trial court was free to *believe or disbelieve* any or all of the contested evidence including the records contained in Exhibit 1, *see White v. Dir. of Revenue,* 321 S.W.3d 298, 312 (Mo. banc 2010), it appears to have erred as a matter of law when, contrary to section 302.312(1), it determined that these records were not competent.

5. The recent Supreme Court of Missouri opinion of *White* involved the review of a driver's license suspension under section 302.535 rather than the review of a license revocation under section 577.041 as in the present matter. Yet, due to the similarities in these statutes, our Supreme Court "has cited to section 577.041 cases interchangeably with section 302.535 cases when discussing the issues related to probable cause, the standard of review, and the deference given to implicit and

explicit factual findings." *Id.* at 305 n. 6. We do likewise in this opinion without any further indication or discussion.

We also note that our high court's ruling in *White* necessarily overrules prior case law dealing with standards of review and other considerations relating to these types of sections 577.041 and 302.535 cases. To the extent that cases cited in this opinion are in conflict with the holding in *White* they are cited herein to support other principles of law not affected by the *White* ruling.

6. While Driver did not introduce any of his own evidence, nevertheless, this case is still considered a contested matter in that there was no stipulation of facts by the parties and counsel for Driver engaged in cross-examination of Officer Hicks. *Id.* at 308–09.

7. "The terms 'reasonable grounds' and 'probable cause' are basically synonymous terms." *Arch v. Dir. of Revenue,* 186 S.W.3d 477, 480 (Mo.App.2006).

termining whether substantial evidence exists to support the trial court's judgment, whether the judgment is against the weight of the evidence-"weight" denoting probative value and not the quantity of evidence; or whether the trial court erroneously declared or misapplied the law.

(Internal citations and quotations omitted.)

██ Here, Driver contested the factual and legal determination of reasonable grounds by cross-examining Officer Hicks at trial. "Because the [D]irector's evidence was contested, the trial court was free to accept or reject any or all of [Officer Hicks's] testimony regarding probable cause." *Id.* at 311. "The trial court could have believed that [Officer Hicks] was mistaken or applied an unreasonable standard regarding the indicia of intoxication that was the basis for the probable cause determination." *Id.* "Additionally, the trial court viewed [Officer Hicks's] demeanor when [she was] testifying, and such observations are a proper consideration in the court's assessment of the credibility of the [D]irector's evidence." *Id.* at 312. "In light of the standard of review, this Court defers to the trial court's view of the evidence and will not second guess the trial court on the contested facts." *Id.* However, from our review of the judgment in this matter, instead of finding that Officer Hicks's testimony was not credible, or that she was mistaken or applied an unreasonable standard regarding the indicia of intoxication, in its judgment the trial court determined that Officer Hicks's testimony was not competent and was not admissible. Nothing in the record supports this determination. In this respect the trial court erred as a matter of law. "Missouri presumes that a witness is competent to testify, except for a few statutory exceptions including mental incapacity." *State v. Robinson,* 835 S.W.2d 303, 307 (Mo. banc 1992).

A witness is competent to testify if the witness shows '(1) a present understanding of, or the ability to understand upon instruction, the obligation to speak the truth; (2) the capacity to observe the occurrence about which testimony is sought; (3) the capacity to remember the occurrence about which testimony is sought; and (4) the capacity to translate the occurrence into words.' *Id.* (quoting *State v. Feltrop,* 803 S.W.2d 1, 10 (Mo. banc 1991)). The trial court abused its discretion in finding that Officer Hicks's testimony was not "competent" and was not admissible. *See id.* (holding that a finding of witness competency is for the discretion of the trial court and will not be reversed except for clear abuse of that discretion), as well as when it abused its discretion in inferentially determining the records submitted by the Director in its Exhibit 1 were not competent and not admissible. Point I has merit.

The judgment of the trial court is reversed and remanded for further proceedings so as to permit the trial court to consider the testimony of Officer Hicks and the records submitted in Exhibit 1 by the Director.

LYNCH and BURRELL, JJ., Concur.