Patrick Thomas CARTWRIGHT,
Respondent,

v.

DIRECTOR OF REVENUE, STATE
OF MISSOURI, Appellant.

No. WD 44742.

Missouri Court of Appeals,
Western District.

Dec. 17, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 28, 1992.

Application to Transfer Denied
March 24, 1992.

William L. Webster Atty. Gen., Jefferson City, Tracey L. Dano Sp. Asst. Atty. Gen., Independence, for appellant.

Thomas J. Cox, Kansas City, for respondent.

Before LOWENSTEIN, C.J., and TURNAGE, and SPINDEN, JJ.

TURNAGE, Judge.

The Director of Revenue revoked the driver's license of Patrick Thomas Cartwright for one year for his refusal to submit to a chemical test pursuant to § 577.-041, RSMo Cum.Supp.1990. Cartwright appealed to the circuit court and that court reversed the Director's decision and ordered the reinstatement of Cartwright's license. The Director has appealed and contends the judgment is not supported by the evidence. Reversed and remanded.

On February 22, 1991, at about 2:30 a.m., Officer Porter of the Kansas City Police Department saw a vehicle lying on its passenger side near a street. Porter observed Cartwright, the only occupant of the vehicle, standing up inside. The car doors could not be opened and Porter called the fire department which broke the windshield and Cartwright climbed out. Porter obtained Cartwright's driver's license from him while Cartwright was in an ambulance which had been called to the scene.

Officer Porter called for an accident investigation unit. Officer Bewick arrived and Porter gave Bewick the information he had including Cartwright's driver's license. Bewick went to Research Hospital where he found Cartwright on a stretcher engaged in a telephone conversation with his mother. Bewick noticed an odor of alcohol about Cartwright and observed that his eyes were bloodshot, his pupils were dilated, and his speech was slurred. Bewick talked with Cartwright who admitted that he had been driving the vehicle. Bewick asked Cartwright if he had been drinking, but Cartwright declined to answer. Bewick formed the opinion that Cartwright was intoxicated and placed him under arrest for violation of the Kansas City ordinance prohibiting driving while intoxicated. Bewick thereafter read Cartwright his *Miranda* rights, his rights under the Missouri implied consent law and requested that Cartwright read and sign a "DUI/Miranda Waiver." Cartwright refused to sign the waiver form but indicated that he understood the rights as they were read to him.

Bewick requested Cartwright's consent for a blood sample to be drawn from him to test for alcohol content, and Bewick explained to Cartwright that if he refused to take the test he would lose his driver's license for a year. Cartwright replied that he would "take his chances." Bewick explained the implied consent law to Cartwright the second time and again requested him to submit to a blood test and Cartwright replied "No."

Bewick and Porter testified in the circuit court to the above facts. Cartwright testified that he was in Research Hospital on the morning of February 22, 1991, but he did not know how he got there. He stated he woke up the next day with a swollen forehead as a result of a blow to the head. He said he did not remember anything that happened while he was in the hospital. He specifically stated that he did not remember a police officer coming to see him nor did he remember the officer requesting him to give a blood sample.

At the conclusion of the evidence the court stated on the record that it believed that Cartwright was upset and was not aware of what was going on and that it believed Cartwright's testimony. The

judgment entered by the court found that Cartwright did not refuse to submit to the chemical test.

Under § 577.041.2 the court on a hearing on an appeal from a driver's license revocation shall determine only three issues: Whether the person was arrested, whether or not the arresting officer had reasonable grounds to believe the person was driving a motor vehicle while in an intoxicated condition and whether or not the person refused to submit to the test. The parties agree the third requirement is the only one in dispute.

Section 577.020.1, RSMo 1986, provides that any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to a chemical test for determining the alcohol or drug content of his blood. Section 577.033, RSMo 1986, provides that a person who is unconscious or is otherwise in a condition rendering him incapable of refusing to take a test shall be deemed not to have withdrawn the consent provided by § 577.020 and the test may be administered.

The Director contends the evidence was insufficient to support a finding that Cartwright did not refuse a test, and Cartwright contends that the court stated that it believed Cartwright and that this court is bound by that credibility finding.

The difficulty with Cartwright's credibility argument is that Cartwright did not testify that he did not refuse to take the test. Cartwright's testimony was that he did not remember talking with the officer and thus had no memory of any request to take a test. When the court stated that it believed Cartwright it was only expressing the view that it believed that Cartwright did not remember talking with the officer because that was the full extent of his testimony. The question presented in this case is not one of credibility but whether or not the refusal to take a test must be knowing.

In *Corum v. McNeill*, 716 S.W.2d 915, 917[2] (Mo.App.1986), the court considered an argument that the person requested to take a breathalizer test was incapable of validly refusing because of intoxication.

The court noted that the person stated several times that she would not take the test. The court held that "to allow an intoxicated person to avoid the consequences of her refusal to take a breathalizer test based on her inability to comprehend it because she was intoxicated is violative of the statute's intent."

Cartwright does not contend that he was so intoxicated that he could not knowingly refuse to take the test but contends that he did not remember talking with the officer because of a blow to the head. In *People v. Kirby*, 145 Ill.App.3d 144, 99 Ill.Dec. 209, 495 N.E.2d 656 (1986), Kirby testified he did not remember the accident or the following two days. He contended that he was incoherent and was thus unable to refuse a breath test. The court held that the legislature intended the implied consent statute to facilitate prosecution of intoxicated drivers and that it would be absurd to allow persons to evade the sanctions imposed by law for refusal to take an alcohol test because they were too intoxicated to understand the consequences of their refusal. The court stated that it would be just as absurd to accept the argument that one could evade the sanctions of the law by saying he did not remember refusing because he was incoherent. The court stated:

> For the statute to have any meaning, a police officer must be able to rely upon the objective fact of refusal without regard to a suspect's subjective intentions. Voluntary intoxication, or any other condition which might render a refusal "unknowing," cannot save a motorist from the consequences of refusing to be tested for intoxication.

*Id.* 99 Ill.Dec. at 211, 495 N.E.2d at 658[5]. The court further held that the only relevant evidence was the officer's testimony that the person refused the test and whether or not the person remembered his refusal is not an issue under the implied consent statute.

The holding in *Kirby* was followed in *People v. Goodman*, 173 Ill.App.3d 559, 123 Ill.Dec. 417, 527 N.E.2d 1055 (1988), another case in which the person contended that he had no memory of refusing a test.

This court finds the reasoning in *Kirby* persuasive. The statutes in this state do not require that a refusal be knowing, and in fact § 577.033 allows a test to be given even if the person is unconscious or otherwise in a condition rendering the person incapable of refusing to take a test. In *Kaufman v. State*, 286 So.2d 723, 725[1] (La.App. 1st Cir.1973), the court considered a statute identical to § 577.033 and stated:

> Thus, if the test may be performed on a person subject to the statute whose condition is such as to render him incapable of refusal, we would be hard pressed to judicially interpret the statute so as to require that a person must knowingly refuse the test before the sanctions of the statute may be applied to him.

The legislature was undoubtedly aware of the deaths and carnage caused daily on the highways in this country by automobile drivers who have been drinking. For that reason the legislature has enacted the implied consent law and the provision that a person's driver's license will be suspended for one year on refusal to take a chemical test to determine the alcohol or drug content in the blood. The legislature has further provided that even those who are unconscious or otherwise incapable of refusing have not withdrawn their consent to be tested for blood alcohol or drug content and the test may be administered. It would emasculate these laws which have been enacted for the protection of those who use the highways from intoxicated drivers to hold that a refusal to submit to a chemical test must be knowing. As stated in *Kaufman* this court would be hard pressed to interpret the statutes to require that a person must knowingly refuse a test before sanctions may be imposed.

There is nothing in the implied consent law which requires that a refusal be knowing, and an officer is entitled to take a refusal at face value without being required to determine the person's mental capacity to make such decision. As held in *Kirby*, the only relevant evidence was the officer's testimony that Cartwright refused to submit to a test to determine the alcohol content of his blood. Cartwright's testimony that he did not remember talking with the officer or remember refusing to take a test was not material or relevant because it need not appear that Cartwright knowingly refused to submit to a test.[1] This holding is consistent with *Corum*. The only question is whether or not Cartwright refused the test. The only evidence on that question came from the officer when he testified that Cartwright refused to submit to a test.

There is no evidence to support a finding that Cartwright did not refuse to take a test. The judgment is unsupported by the evidence. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

The judgment is reversed and this cause is remanded with directions to enter judgment affirming the action of the Director in revoking the driver's license of Patrick Thomas Cartwright for one year.

All concur.

---

1. Other states have held that a refusal to submit to a test under the implied consent law need not be knowing. *In re Petition of Matherly*, 354 S.E.2d 603 (W.Va.1987), *Zakhi v. State*, 560 N.E.2d 683 (Ind.App.1990), *Carey v. Melton*, 64 A.D.2d 983, 408 N.Y.S.2d 817 (2d Dept.1978).