Linda Lorraine NACE, Respondent,

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. WD 62122.**

Missouri Court of Appeals,
Western District.

Oct. 28, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 2003.

Application for Transfer Denied
Jan. 27, 2004.

Clayton T. Fielder, Jefferson City, for appellant.

Daniel R. Carter, Warrensburg, for respondent.

Before PAUL M. SPINDEN, P.J., THOMAS H. NEWTON and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Judge.

Ms. Linda Lorraine Nace was severely injured in a one-car accident. After Ms. Nace was taken to a hospital, a Missouri

State Highway Patrolman (Trooper) arrived at the hospital and requested that she submit a blood sample to determine her blood alcohol content. The trooper contended that Ms. Nace refused and the Director of Revenue (Director) subsequently revoked Ms. Nace's driver's license pursuant to section 577.041.[1] After a hearing on the matter, the trial court found that she did not refuse the request for a blood sample. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At the hearing to challenge Ms. Nace's driver's license revocation, the following evidence was presented. On January 21, 2002, at 12:41 a.m., Ms. Nace was involved in a one-car accident on Missouri Highway 13 in Johnson County, Missouri. Ms. Nace was ejected from her vehicle, which had gone airborne and overturned as it struck the ground. When Missouri State Highway Patrol Trooper Dan Schubert arrived at the scene and attempted to question Ms. Nace while she was lying in the back of an ambulance, he observed that there was a strong odor of intoxicants emitting from her breath. Trooper Schubert tried to administer a horizontal gaze nystagmus test on Ms. Nace but her eyes would not stay open. Trooper Schubert testified in part, "She was pretty impaired, and she was unable to open—hold her eyes open." He did administer a portable breath test on Ms. Nace at the scene of the accident, which indicated the presence of alcohol.

Ms. Nace was lifeflighted to Research Medical Center in Kansas City, Missouri. At about 1:45 a.m., Trooper Alex Whitehead went to the hospital at Trooper Schubert's request to draw blood from Ms. Nace. Trooper Whitehead asked Ms. Nace to provide a blood sample and he testified that Ms. Nace refused. Ms. Nace testified that she could not remember the accident, talking to any police officer, or being asked to take the test.

Also, according to Trooper Schubert, Trooper Whitehead told him that Ms. Nace was unable to respond to questions due to her medical condition. On a portion of the Alcohol Influence Report (AIR), Trooper Schubert wrote, "unable to respond to questions due to medical condition."

John Nace, Ms. Nace's brother, testified by deposition and Ms. Ellen Nace, the mother of Ms. Nace, testified in person. Mr. Nace testified that he arrived at the hospital about 2:00 a.m. and that his sister could not recognize him and was semiconscious. He tried to talk to her, but she did not respond. Furthermore, the injuries he observed were: A large contusion on the middle of her forehead, blood on her face, and various cuts and scratches. Ms. Ellen Nace testified that she arrived at the hospital around 3:00 a.m. and, at that time, her daughter did not respond to her and appeared to be incoherent.

After the hearing, the trial court found that Ms. Nace did not refuse to submit to a chemical test and ordered the Director to restore Ms. Nace's driving privileges.

The Director appeals the decision of the trial court claiming it erred in reinstating Ms. Nace's driving privileges because the judgment that Ms. Nace did not refuse the blood test was against the weight of the evidence and unsupported by substantial evidence. The Director asserts that the only evidence in the record regarding refusal of the test is the testimony of Trooper Whitehead that Ms. Nace said "no" when asked to submit to a blood test, and Ms. Nace's testimony that she did not remember refusing to submit to a blood

---

1. All statutory references are to RSMo 2000 unless otherwise indicated.

test. The Director claims that the trial court should have found that Ms. Nace refused the test.

## II. STANDARD OF REVIEW

Review of the trial court's decision regarding the revocation of a driver's license will be sustained by the appellate court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "In reviewing the trial court's judgment, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment." *Kidd v. Wilson*, 50 S.W.3d 858, 860 (Mo.App. W.D.2001).

## III. LEGAL ANALYSIS

When a person drives on the public highways of Missouri, she is deemed to have given consent to chemical tests for the purpose of determining the alcohol or drug content of her blood if arrested for an offense related to driving a motor vehicle while intoxicated. § 577.020. Ms. Nace's driver's license was revoked under Section 577.041 based on her refusal to submit a sample of her blood to Trooper Whitehead for testing under section 577.020. Section 577.041.1 provides in pertinent part:

If a person under arrest, or who has been stopped pursuant to subdivision (2) or (3) of subsection 1 of section 577.020, refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then none shall be given and evidence of the refusal shall be admissible in a proceeding pursuant to section 565.024 or 565.060, RSMo, or section 577.010 or 577.012. The request of the officer shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to

take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test.

 To uphold a driver's license revocation for failure to submit to a chemical test under section 577.041, the trial court must determine that "(1) the driver was arrested, (2) the arresting officer had reasonable grounds to believe the driver was driving while intoxicated, and (3) the driver refused to submit to the test." *Mount v. Dir. of Revenue*, 62 S.W.3d 597, 599 (Mo.App. W.D.2001). The Director has the burden of proof for each element, and failure to satisfy the burden will result in reinstatement of the driver's license. *Id.* The only issue here is whether Ms. Nace refused to submit to the test.

Ms. Nace claims that due to her injuries in the accident, she was incapable of refusing to give a sample of her blood, and, therefore, her license cannot be revoked under section 577.041. Ms. Nace relies on section 577.033 for this proposition, which states:

Any person who is dead, unconscious or who is otherwise in a condition rendering him incapable of refusing to take a test as provided in sections 577.020 to 577.041 shall be deemed not to have withdrawn the consent provided by section 577.020 and the test or tests may be administered.

Ms. Nace testified that she did not remember the wreck or speaking with Trooper Whitehead. She claims that her witnesses and the medical records show her to be non-responsive to any questions until the next afternoon, so she could not have responded to Trooper Whitehead's request that she give a blood sample and, therefore, she did not refuse to take a test. *Cartwright v. Director of Revenue*, 824 S.W.2d 38, 39 (Mo.App. W.D.1991), established the test for determining if a driver

refused to submit to a test for alcohol content when the driver claims not to remember the request. Mr. Cartwright was involved in a one-car accident and he was taken to a hospital. A police officer arrived at the hospital and noticed an odor of alcohol from Mr. Cartwright. The officer talked to Mr. Cartwright and asked him to submit to a blood test for alcohol content. According to the officer, Mr. Cartwright refused. *Id.* Mr. Cartwright claimed that he did not remember speaking with the police officer, nor did he remember the request to give a blood sample. *Id.* The trial court stated it believed Mr. Cartwright's testimony that he was not aware of what was going on and held that he did not refuse to submit to a test. *Id.* at 39–40.

On appeal, this court stated that the question in the case was "not one of credibility but whether or not the refusal to take a test must be knowing." *Id.* at 40. Mr. Cartwright claimed that he did not remember talking with the officer because of a blow to his head. *Id.* This court held that "[t]here is nothing in the implied consent law which requires that a refusal be knowing, and an officer is entitled to take a refusal at face value without being required to determine the person's mental capacity to make such decision." *Id.* at 41. The only issue was whether or not Mr. Cartwright refused, and the only relevant evidence was the officer's testimony that Mr. Cartwright refused to submit to a blood test. *Id.* Mr. Cartwright's testimony that he did not remember refusing was irrelevant to that issue because it only applied to whether he knowingly refused. *Id.*

The Missouri Supreme Court adopted this objective test in *Berry v. Director of Revenue* 885 S.W.2d 326, 327 (Mo. banc 1994). In *Berry,* the trial court applied section 577.033, saying Mr. Berry was in-

capable of refusing due to his injuries, not his intoxication. The Eastern District affirmed, stating that Mr. Berry's injury made *Cartwright* inapplicable. *Berry v. Dir. of Revenue,* No. 63736, 1994 WL 4283 (Mo.App. E.D. January 11, 1994). The Missouri Supreme Court reversed, holding that Mr. Berry's contention that his injuries made him unable to refuse a test was without merit and that his case was indistinguishable from *Cartwright. Berry,* 885 S.W.2d at 327. An officer testified that Mr. Berry stated he "knew his rights" and refused to give a blood sample, and that Mr. Berry "appeared coherent and engaged in a normal conversation with a hospital technician." *Id.* Mr. Berry testified that he did not recall the officer requesting a test and he did not recall refusing any such test. *Id.* The Supreme Court applied the *Cartwright* test and said the only evidence on the record applying to the issue of whether Mr. Berry refused the test was the officer's testimony. *Id.* at 327–28. The Missouri Supreme Court reversed the trial court because its decision was unsupported by substantial evidence. *Id.* at 328.

The Director claims that *Cartwright* and *Berry* are controlling in this case and the trial court should be reversed. The only direct evidence on the question of whether Ms. Nace refused to give a blood sample is Trooper Whitehead's testimony that she did refuse, because Ms. Nace merely testified that she did not remember. *Berry,* 885 S.W.2d at 327–28. So her testimony is not probative because it provides no evidence of whether or not she refused. But Ms. Nace focuses on the fact that the refusal must be of her own volition. *Spradling v. Deimeke,* 528 S.W.2d 759, 766 (Mo.1975) (stating that in the context of the implied consent law, refusal means "that an arrestee, after having been requested to take the breathalyzer test, declines to do so of *his own*

*volition."*) (emphasis added). She claims that the evidence shows that she was so injured that she could not possibly have refused to give a blood sample *of her own volition,* and, therefore, section 577.033 applies. This case turns on whether it is distinguishable from *Cartwright* and *Berry,* such that we can affirm the trial court's holding that Ms. Nace did not refuse to give a blood sample.

Had Troopers Schubert or Whitehead simply taken a blood sample from Ms. Nace without asking for her consent because of her injuries, section 577.033 would apply and the results of a blood test would be admissible. But that did not happen in this instance and, therefore, section 577.033 is inapplicable. The only question is whether Ms. Nace refused to give a blood sample and, thus, under section 577.041, the Director could revoke her license.

The only evidence directly on this point is Trooper Whitehead's testimony that she refused. At the hearing, Trooper Whitehead testified that he saw Ms. Nace at around 1:45 a.m. He said that while in her hospital room she was talking to nurses and doctors but that she did not respond to him "for the most part." He stated that she appeared to understand his questions regarding the blood test. He claimed that she specifically said "no" to his request to provide a sample of her blood. He marked this refusal on the Alcohol Influence Report (AIR). The evidence on the AIR and from Trooper Whitehead's testimony is sufficient to establish a refusal to submit to a test. *Lyons v. Dir. of Revenue,* 36 S.W.3d 409, 411 (Mo.App. E.D.2001).

■ Although the Director provided sufficient evidence to establish that a refusal occurred, the analysis does not end there. The Director ignores the substantial evidence rebutting the prima facie case and showing that it is unlikely that Ms. Nace actually could have refused to take the test due to the extent of her injuries. This showing is in spite of the fact that Ms. Nace's testimony that she does not remember is irrelevant under the *Cartwright* test. *Kidd,* 50 S.W.3d at 862 (stating that when the Director points out evidence in support of her argument but ignores the contrary evidence presented, she fails to recognize the appellate standard of review. "The trial court is afforded wide discretion even if there is evidence in the record which would support a different result. . . . Indeed, we must disregard all contrary evidence and permissible inferences that could have been drawn therefrom.") (internal quotation marks and citations omitted). The trial court cannot disregard uncontroverted evidence in support of the Director's case. *Hopkins–Barken v. Dir. of Revenue,* 55 S.W.3d 882, 885 (Mo.App. E.D.2001). But this is not a case where the evidence is uncontroverted.

The evidence presented by Ms. Nace suggested that she was not coherent when Trooper Whitehead was in her room and that his observations about her condition were flawed. John Nace, Ms. Nace's brother, testified by deposition that he arrived at Ms. Nace's bedside at around 2:00 a.m. On his arrival, Ms. Nace did not recognize him and she was semi-conscious. She was strapped to a backboard and wearing a neck brace. She had a large contusion on her forehead and blood on her face. He also said that she did not appear coherent to him. Ms. Ellen Nace, Ms. Nace's mother, testified that she arrived at the hospital around 3:00 a.m. and that Ms. Nace was strapped to the table and had blood on her face. She also said that Ms. Nace was not alert at that time and did not answer questions until the following afternoon. The report from the Warrensburg Fire Department, which responded to the scene of the accident, indi-

cated that Ms. Nace had an "altered level of consciousness," although the history form filled out at Research said that she was "somewhat combative but alert and oriented." Trooper Schubert said that at the scene her eyes would not stay open to perform the horizontal gaze nystagmus. He also said she was "pretty impaired." Although Trooper Schubert was not at the hospital, he spoke with Trooper Whitehead afterwards. Trooper Schubert marked out the questions on the AIR that follow the *Miranda* warnings, writing that Ms. Nace was unable to respond to the questions due to her medical condition, and indicating in his testimony that this was based on what Trooper Whitehead told him.

▬ The trial court's judgment will be affirmed under any reasonable theory supported by the evidence. *Berry,* 885 S.W.2d at 328. In *Cartwright* and *Berry,* the only evidence offered was the testimony of the driver and the officers. But here Ms. Nace has presented evidence other than her own testimony, which is not probative on the issue of her refusal. This additional evidence showing the extent of Ms. Nace's injuries, the testimony of her brother and mother and the fire department report, makes this case different from both *Cartwright* and *Berry,* where neither person introduced additional evidence of his injuries and coherency during questioning. The evidence Ms. Nace presented shows more than that she did not knowingly refuse, which is what concerned the court in *Cartwright.* This evidence supports a finding that she simply could not have been aware enough of anything to refuse, consent, or attach any meaning to what Trooper Whitehead asked. Refusal means declining to take the chemical test when requested to do so *of one's own volition. Mount,* 62 S.W.3d at 599 (emphasis added). The extensive evidence showing that Ms. Nace was at least un-

aware, if not incoherent, both before and shortly after Trooper Whitehead spoke with her, is sufficient to support a finding that Ms. Nace was incapable of acting on her own volition and refusing to give a blood sample. Ms. Nace's evidence provides a reasonable theory for the trial court to have determined that she did not have the ability to refuse and, therefore, did not withdraw her consent.

▬ The trial court assesses the credibility of witnesses, and is "free to believe or disbelieve the testimony of either witness, even when uncontradicted." *State v. Clark,* 55 S.W.3d 398, 402 (Mo.App. S.D. 2001); *see also Berry,* 885 S.W.2d at 328 ("The trial court has the prerogative to accept or reject all, part, or none of the testimony."). The trial court did not disregard Trooper Whitehead's testimony; it chose to disbelieve his testimony that Ms. Nace refused to give a blood sample. On cross-examination, Trooper Whitehead testified that he did not believe that Ms. Nace was strapped to a backboard and that, while she looked banged up, he did not recall any blood specifically on her face. He was the only person who did not notice the extent of Ms. Nace's injuries and that she was strapped down, which raises a question about how observant he was when he saw her in the hospital. He testified that she was not responding to him and marked on the AIR that she did not respond when he read her the *Miranda* rights, yet he claims she was coherent enough to answer his question about the blood test. He also did not ask her any of the questions listed on the AIR after the *Miranda* rights but before the implied consent. He testified that he does not bother to ask those questions after someone refuses to give a sample, but they are listed before reaching that part of the AIR. Trooper Schubert testified that Trooper Whitehead told him Ms. Nace was

unable to answer those questions due to her medical condition. Because she was unable to answer all of those questions and was basically unresponsive to Trooper Whitehead the majority of the time, there was sufficient evidence for the trial court to decide she was incapable of refusing. The trial court did not decide it believed Ms. Nace's testimony, as in *Cartwright*, it decided Trooper Whitehead's testimony was not credible because of all the evidence showing Ms. Nace could not have responded to his request. This court will not invade the trial court's "domain of credibility determination." *Clark*, 55 S.W.3d at 403.

█ This decision does not overrule *Cartwright*, it merely takes the analysis one step further in this circumstance where the driver has additional evidence to rebut the Director's case. *Cartwright* holds that the driver's subjective state of mind is irrelevant, creating an objective test that looks only at the driver's objective actions. But *Cartwright* does not set out a standard for the officer. The officer is also subject to an objective standard, whether a reasonable person would have perceived the driver's actions as a refusal. This standard does not focus on whether the driver knew he or she refused or that the officer subjectively interpreted whether the driver refused, only on how a reasonable person would have perceived the driver's actions. This will not require law enforcement officers to determine a person's mental capacity to refuse a test, as this court was concerned with in *Cartwright*. The evidence here suggests that Ms. Nace's mental capacity was impaired and that Trooper Whitehead failed to recognize the clear facts. We are not suggesting drivers will be able to avoid the effect of Section 577.041 when they are intoxicated or suffering from minimal injuries and refuse to provide a blood sample.

But when a person is able to provide additional evidence showing that she was injured to the point that she was not capable of refusing to submit to a test, then a trial court may reasonably conclude the person did not withdraw her consent to submit to a test as provided in section 577.020. Therefore, after a thorough review of the record on appeal and the appellate briefs, the objective standard leads us to hold that a reasonable person would not have perceived Ms. Nace's actions as a refusal and we affirm the trial court's judgment.

PAUL M. SPINDEN, P.J. and RONALD R. HOLLIGER, J. concur.