

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| ADAM M. TARWATER, | ) | |
| | ) | |
| Appellant-Respondent, | ) | WD84007 Consolidated with |
| | ) | WD84008 |
| v. | ) | |
| | ) | OPINION FILED:  October 5, 2021 |
| DIRECTOR OF REVENUE, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable Louis Angles, Judge

Before Division Four:  Cynthia L. Martin, Chief Judge, Presiding, Karen King Mitchell, Judge and Gary D. Witt, Judge

The Director of Revenue ("Director") appeals the trial court's judgment setting aside the revocation of Adam M. Tarwater's ("Tarwater") driver's license pursuant to section 577.041.[1]  The Director argues that the trial court erred in finding that Tarwater did not refuse to take a breath test.  Tarwater cross-appeals, arguing that the trial court erred in finding that there were reasonable grounds to believe he was driving a motor vehicle while

---

[1]All statutory references are to RSMo 2016, as supplemented through the date of Tarwater's arrest, August 24, 2019, unless otherwise indicated.

in an intoxicated or drugged condition. We reverse the trial court's judgment and remand this matter to the trial court with instructions to enter a judgment sustaining the revocation of Tarwater's driving privileges.

## Factual and Procedural Background[2]

On August 24, 2019, Corporal Christian Childs ("Corporal Childs") of the Liberty Police Department responded to the scene of a two-car accident at US Highway 69 and B Highway in Clay County at 11:41 a.m. after being dispatched approximately five to ten minutes earlier. Officer Jeffrey Gartner ("Officer Gartner") was already at the scene when Corporal Childs arrived. Officer Gartner's accident report indicated that the time of the accident was 11:28 a.m., and that he arrived on the scene at 11:35 a.m.

When Corporal Childs arrived on the scene, he saw Tarwater, the driver of one of the vehicles involved in the accident, hand Officer Gartner a bottle of vodka. Officer Gartner told Corporal Childs that Tarwater claimed to have consumed alcohol after the accident.

Corporal Childs spoke with Roy Marrant ("Marrant"), the driver of the other vehicle involved in the crash. Marrant identified Tarwater as the driver of the vehicle that caused the accident. Marrant said he did not observe Tarwater drinking after the accident. Marrant told Corporal Childs that Tarwater tried to persuade Marrant to resolve the accident without calling the police.

---

[2]We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the trial court's judgment. *Goforth v. Dir. of Revenue*, 593 S.W.3d 124, 126 n.1 (Mo. App. W.D. 2020).

Corporal Childs then spoke with Tarwater, who was sitting on the ground staring off into the distance. Tarwater had a strong odor of intoxicating beverages, and watery and bloodshot eyes. Tarwater was cooperative, but his balance was uncertain, his speech was slurred, he was mumbling and speaking very quietly, and he was hiccupping. In response to Corporal Childs's questions, Tarwater said that he did not have any medical conditions and that he was not taking any medications. Tarwater told Corporal Childs that he had a couple of beers before the accident. Corporal Childs asked Tarwater about the bottle of vodka. Tarwater admitted to Corporal Childs that he had drank some vodka, without indicating when. Tarwater admitted that he was driving at the time of the accident.

Corporal Childs asked Tarwater to perform field sobriety tests. Tarwater refused. Corporal Childs arrested Tarwater on suspicion of driving while intoxicated. During a later inventory of Tarwater's vehicle, two additional bottles of vodka were found, both of which were unopened.

After transporting Tarwater to the Liberty jail, Corporal Childs read the implied consent warning to Tarwater at 12:32 p.m. Tarwater asked to speak with a lawyer. Corporal Childs gave Tarwater access to a telephone and provided Tarwater with a phonebook. Tarwater ultimately called a co-worker. At 12:55 p.m., Corporal Childs asked Tarwater whether he agreed to provide a breath sample. Tarwater agreed, but before providing a sample, Tarwater asked Corporal Childs whether he would be charged with driving while intoxicated if he tested over the legal limit. Corporal Childs informed Tarwater that he was already under arrest for driving while intoxicated whether he provided

3

a breath sample or not. Tarwater then said, "fuck that," and refused to provide a breath sample.

Tarwater's driver's license was revoked pursuant to section 577.041 based on his refusal to submit to a chemical test. Tarwater sought judicial review of the administrative revocation of his driving privilege. At the hearing, Corporal Childs and Tarwater testified, and certified records from the Missouri Department of Revenue[3] pertaining to the case, a DVD containing two videos from Corporal Childs's patrol car on the scene, and a DVD containing two videos of Tarwater during the booking process, were entered into evidence. Tarwater testified that he drank one or two beers approximately seven to eight hours prior to the accident, and that he did not feel intoxicated prior to the accident. Tarwater testified that, just before the accident, he left a gas station where he had purchased three pints of vodka. Tarwater testified that after the accident, he drank more than half of one of the three bottles of vodka. Tarwater testified that he began feeling intoxicated as he was speaking to Officer Gartner at the scene, and that by the time Corporal Childs arrived, "the alcohol was taking effect and it's all fairly hazy."

The trial court issued its findings of fact, conclusions of law, and judgment ("Judgment") on July 20, 2020. The Judgment concluded that Tarwater was arrested, and that "[t]here were reasonable grounds to believe [Tarwater] was driving a motor vehicle while in an intoxicated or drugged condition." However, the Judgment also concluded that Tarwater "did not volitionally fail to do what was necessary for the [breath] test[] to be

---

[3]*See* section 302.312.1 ("Copies of all papers, documents, and records lawfully deposited or filed in the offices of the department of revenue . . . and copies of any records, properly certified by the appropriate custodian or the director, shall be admissible as evidence in all courts of this state . . . .").

performed."  In support of this conclusion, the trial court found that Tarwater "consumed a pint of vodka after [a] minor accident;" that the "[b]ooking video shows [Tarwater] too drunk to find [an] attorney in [the] phone book;" that Tarwater was "unable to dial a phone;" and that Tarwater was becoming "progressively more intoxicated during [the] interview." The Judgment concluded that, pursuant to section 577.033, Tarwater was "in a condition rendering him incapable of refusing to take [the] breath test."  The Judgment set aside the revocation of Tarwater's driving privilege.

Both the Director and Tarwater appeal.

**Standard of Review**

We review the trial court's judgment in a license revocation case using the same standard employed in other court-tried cases.  *Ducote v. Dir. of Revenue*, 577 S.W.3d 170, 173 (Mo. App. E.D. 2019).  We will affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law."  *Id.* (quoting *White v. Dir. of Revenue*, 321 S.W.3d 298, 307-08 (Mo. banc 2010)).  We view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment.  *Goforth v. Dir. of Revenue*, 593 S.W.3d 124, 126 n.1 (Mo. App. W.D. 2020).

**Analysis**

The Director challenges the Judgment's conclusion setting aside the revocation of Tarwater's driving privileges, and argues that the trial court erred when it relied on section 577.033 to find that Tarwater did not volitionally refuse to perform a breath test.  Tarwater challenges the Judgment's conclusion that there were reasonable grounds to believe that he

5

was driving a motor vehicle while in an intoxicated or drugged condition, and argues that there was no evidence to support this conclusion.[4] We address the issues separately.

***Section 577.033 is not applicable when determining whether a driver has refused to submit to a test pursuant to section 577.041. Instead, refusal to submit to a test pursuant to section 577.041 means declining to submit to a test of one's own volition, determined objectively, and without regard to whether the declination is knowing or remembered.***

The Director argues that the trial court's finding that Tarwater did not volitionally refuse to perform a breath test was not based on substantial evidence. The Director argues that section 577.033, which was expressly referred to by the trial court, is not applicable to determining whether a driver refused to submit to a test pursuant to section 577.041; that refusal to submit to a test need not be knowing and is not dependent on a driver's subjective mental state; and that video evidence established that Tarwater objectively refused to submit to a breath test of his own volition. We agree.

Any person who operates a vehicle in Missouri is deemed by statute to have impliedly consented to a chemical test to determine his or her blood alcohol content if the person "is arrested for an offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was operating a vehicle . . . while in an intoxicated condition." Section 577.020.1(1). If a person under arrest

---

[4]Technically, Tarwater is not aggrieved by the Judgment, which reinstated his driving privileges. Being aggrieved by a judgment is a prerequisite to the statutory right of appeal. Section 512.020 (conferring the right to appeal upon "[a]ny party to a suit aggrieved by any judgment of any trial court"). Tarwater's cross-appeal is tantamount to an argument that the Judgment can be affirmed on an alternative basis should this Court conclude that the Director met its burden to establish that Tarwater refused to submit to the breath test, and will be treated as such. *See Stevenson v. Maxwell*, 605 S.W.3d 1, 5 (Mo. App. W.D. 2020) ("We will affirm the judgment if it is correct under any reasonable theory supported by the evidence."). However, because the alternative ground for affirming the Judgment urged by Tarwater requires him to establish that an express factual finding is not supported by substantial evidence, we do not fault Tarwater for filing a cross-appeal to ensure that the issue is preserved for appellate review.

6

pursuant to section 577.020 refuses upon the request of an officer to submit to a chemical test allowed pursuant to section 577.020, "then evidence of the refusal shall be admissible in any proceeding related to the acts resulting in such . . . arrest." Section 577.041.1. "The request of the officer to submit to any chemical test shall . . . inform the person that evidence of refusal to take the test may be used against such person." Section 577.041.2. In addition, the officer must also inform the person that "his or her license [will] be immediately revoked upon refusal to take the test." *Id*. The administrative ramifications of refusing to submit to a chemical test after a driver's arrest are thus distinct from the criminal ramifications of the arrest. *Cf. Pagano v. Dir. of Revenue, State of Mo.*, 927 S.W.2d 948, 950-51 (Mo. App. E.D. 1996) ("Section 302.505.3 makes clear that the criminal charges and the administrative determination are separate and distinct.") (quotation omitted).

Section 302.574.1 describes the administrative steps to be taken by an officer when "a person who was operating a vehicle refuses upon the request of the officer to submit to any chemical test under section 577.041." The officer is obligated to serve a notice of revocation to the person, and to take possession of his or her license on behalf of the director of revenue. Section 302.574.1. The officer is then obligated to make a "certified report" detailing the information described in section 302.574.2, and to forward the same along with the person's license to the director of revenue, who is then directed to revoke the license of the person for a period of one year. Section 302.574.2 & .3. Such person may then petition for a hearing before a court in the county where the arrest occurred.

Section 302.574.4. At that hearing, and relevant to this case, the only issues before the court are:

(1) Whether the person was arrested or stopped;

(2) Whether the officer had:

(a) Reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated or drugged condition; . . .

. . . and

(3) Whether the person refused to submit to the test.

*Id.* The Director must establish a prima facie case for license revocation by a preponderance of the evidence. *Stanton v. Dir. of Revenue*, 616 S.W.3d 398, 403 (Mo. App. W.D. 2020).

The trial court found that the Director sustained its burden to establish the first and second elements set forth in section 302.574.4. However, the trial court found that the Director did not sustain its burden to prove the third element. The trial court referred to section 577.033 in reaching this conclusion. Section 577.033 provides:

> Any person who is dead, unconscious *or who is otherwise in a condition rendering him incapable of refusing to take a test* as provided in sections 577.020 to 577.041 shall be deemed not to have withdrawn the consent provided by section 577.020 and the test or tests may be administered.

(Emphasis added.) In concluding that Tarwater was "incapable of refusing to take [a] breath test" pursuant to section 577.033, the trial court found that Tarwater did not "volitionally fail to do what was necessary" to submit to a breath test because, in effect, he was too intoxicated to knowingly do so. The trial court's conclusion that Tarwater was too

intoxicated to volitionally refuse to submit to a breath test was legally erroneous in this case.

Section 302.574.4(3) does not explain how refusal to submit to a chemical test as required by section 577.041 is to be determined. However, that issue has been resolved by decisional law.

In *Spradling v. Deimeke*, 528 S.W.2d 759 (Mo. 1975), our Supreme Court addressed the issue of "refusal" to submit to a test, and adopted the following rule:

> "A driver who is advised of his rights under the implied consent law but declines to take a breathalyzer test is deemed to have 'refused' the test so as to require revocation of his license unless he objectively and unequivocally manifested that he did not understand his rights and the warning concerning the consequences of refusal and was denied clarification. A lack of understanding not made apparent to the officer is of no consequence."

*Id.* at 766 (quoting *Wash. Dep't of Motor Vehicles v. Riba*, 520 P.2d 942, 945 (Wash. App. 1974)). In addressing what is meant by the word "refusal," the Supreme Court held:

> In the context of the implied consent law, it simply means that an arrestee, after having been requested to take the breathalyzer test, ***declines to do so of his own volition***. Whether the declination is accomplished by verbally saying, 'I refuse,' or by remaining silent and just not breathing or blowing into the machine, or by vocalizing some sort of qualified or conditional consent or refusal, does not make any difference. The volitional failure to do what is necessary in order that the test can be performed is a refusal.

*Id*. (emphasis added). *Spradling* was decided in 1975, several years before section 577.033 was enacted in 1982.

In *Cartwright v. Director of Revenue*, 824 S.W.2d 38 (Mo. App. W.D. 1991), we addressed a driver's contention that he was "incapable of refusing to take a test" pursuant to section 577.033, and thus could not be deemed to have refused to submit to a test

9

pursuant to section 577.041. There, after the implied consent law was read, the driver indicated he understood the rights that were read to him, but expressly refused to submit to the investigator's request for a blood draw. *Id.* at 39. At a hearing to challenge revocation of his license, the driver did not dispute that he verbally refused to submit to a test, but contended that he was "incapable of refusing to take a test" pursuant to section 577.033 because he did not remember any of the events in the hospital due to a blow to the head. *Id.* at 39-40. The trial court concluded that the driver "did not refuse to submit to the chemical test" because he "was not aware of what was going on." *Id.*

On appeal, we framed the question presented as "whether or not [the driver's] refusal to take a test must be knowing." *Id*. at 40. We rejected the driver's argument that he was incapable of refusing to take a test pursuant to section 577.033, and held that "[t]he statutes in this state do not require that a refusal be knowing." *Id.* at 41. "The only question is whether or not [the driver] refused the test." *Id.* *Cartwright* thus applied *Spradling's* definition of "refusal" and underscored that declining to submit to a test of one's own volition by word or inaction is volitional even if not remembered or knowing due to intoxication or injury.

Our Supreme Court adopted *Cartwright's* reasoning in *Berry v. Director of Revenue*, 885 S.W.2d 326 (Mo. banc 1994), *overruled on other grounds by White*, 321 S.W.3d at 305-07. In *Berry*, a driver was involved in a serious one-car accident, had alcohol on his breath and watery eyes, and refused to cooperate with the officer and with medical personnel on the scene. *Id.* at 326. At the hospital, the officer arrested the driver for driving while intoxicated and asked the driver to provide a blood sample several times. *Id.* The

10

driver verbally expressed his refusal to submit to a test each time. *Id.* at 326-27. At a hearing to challenge revocation of his license, the driver testified that he had no memory of the officer speaking to him at the scene or at the hospital, and blamed his memory lapses on his injuries. *Id.* The driver also claimed that his injuries rendered him physically incapable of refusing a chemical test pursuant to section 577.033. *Id.* The Supreme Court rejected the argument, concluding that the case was indistinguishable from *Cartwright*. *Id.* The Supreme Court concluded that the only issue is whether a driver has objectively refused to submit to a test, and that the driver's subjective mental capacity to knowingly make such a decision is immaterial. *Id.* at 327-28.

Here, as Tarwater acknowledges in his Brief, his entire interview is on videotape. [Respondent's Brief, p. 27] At 1:14 p.m., Corporal Childs attempted to administer the breath test to Tarwater. Tarwater then asked, "Is this going to give me a DWI?" Corporal Childs answered, "You already have a DWI," to which Tarwater responded, "Fuck that," and sat back down. Based on *Spradling's* definition of "refusal," Tarwater objectively refused to submit to a test by vocalizing his refusal to do so. 528 S.W.2d at 766 (holding that "refusal" for implied consent purposes means declining of one's own volition to take a breathalyzer test, which includes "verbally saying, 'I refuse'").

Tarwater argues that despite what he said on the videotape, section 577.033 requires us to re-evaluate the meaning of "volitional refusal," and that he was so intoxicated that he "objectively could not have been aware enough of anything to refuse, consent, or attach any meaning to what the officers were trying explain to him." [Respondent's Brief, p. 27] Tarwater relies on our holding in *Nace v. Director of Revenue*, 123 S.W.3d 252 (Mo. App.

11

W.D. 2003), to argue that "volitional refusal" means "knowing refusal." [Respondent's Brief, pp. 22-23] Tarwater misapprehends the holding in *Nace*.

The issue in *Nace* was whether a driver objectively refused to submit to a test. 123 S.W.3d at 255. In *Nace*, a driver was involved in a serious one-car accident. *Id.* at 254. One trooper testified that approximately an hour after the accident, he asked the driver to provide a blood sample, but the driver expressly refused. *Id.* However, a different trooper testified that the trooper who interacted with the driver at the hospital told him the driver was unable to respond to questions due to her injuries. *Id.* This contested evidence required the trial court to determine whether the driver objectively refused to submit to a test. In resolving this contested factual issue, the trial court considered other evidence relevant to what a reasonable person would conclude, including that the driver's brother testified that approximately ninety minutes after the accident, the driver did not recognize him, was semi-conscious, and did not respond to him when he talked to her; and that the driver's mother testified that two and a half hours after the accident, the driver did not respond to her and appeared to be incoherent. *Id.* After considering all of the evidence, the trial court found that the driver did not objectively refuse to submit to a chemical test. *Id.* at 254.

On appeal, we noted that "Nace's evidence provides a reasonable theory for the trial court to have determined that ***she did not have the ability to refuse***." *Id.* at 258 (emphasis added). We noted that Nace's evidence "shows more than that she did not knowingly refuse, which is what concerned the court in *Cartwright*." *Id.* And we noted, consistent with *Spradling*, that "[r]efusal means declining to take the chemical test when requested to do so *of one's own volition*." *Id.* *Nace* reaffirmed that "volitional refusal" is not

12

synonymous with "knowing refusal," though it may be the subject of contested evidence that must be resolved using an objective test. *Id.* at 259 ("The trial court . . . decided [the trooper's] testimony was not credible because of all the evidence showing Ms. Nace could not have responded to his request."). *Nace* specifically observed that "[w]e are not suggesting drivers will be able to avoid the effect of [s]ection 577.041 when they are intoxicated or suffering from minimal injuries and refuse to provide a blood sample." *Id.* "But when a person is able to provide additional evidence showing that she was injured to the point that she was not capable of refusing to submit to a test, then a trial court may reasonably conclude the person did not withdraw her consent to submit to a test . . . ." *Id.*

Importantly, *Nace* also explained that section 577.033 is not applicable to the question of whether a driver has refused to submit to a test pursuant to section 577.041. *Id.* at 257. As *Nace* observed, section 577.033 is only relevant to determine whether an involuntary blood test has been lawfully administered:

> Had [the troopers] simply taken a blood sample from [the driver] without asking for her consent because of her injuries, section 577.033 would apply and the results of a blood test would be admissible. ***But that did not happen in this instance and, therefore, section 577.033 is inapplicable***.

*Id.* (emphasis added).[5] Thus, when determining as required by section 302.574.4(3) whether an arrested driver has refused to submit to a test, "[t]he only question is whether [the driver] refused to [submit to a test] and, thus, under section 577.041, the Director could

---

[5]*Cartwright* effectively held the same, as it noted that the purpose of section 577.033 is to legislate when implied consent pursuant to section 577.020 is not deemed withdrawn, such that a blood sample can be involuntarily administered. 824 S.W.2d at 41 ("The legislature has further provided [in section 577.033] that even those who are unconscious or otherwise incapable of refusing have not withdrawn their consent to be tested for blood alcohol or drug content and the test may be administered.").

revoke her license." *Id.* at 257. That question is resolved by determining whether a driver objectively declined to submit to a test of his or her own volition, the definition of "refusal" announced in *Spradling* years before section 577.033 was enacted.

The trial court's conclusion that Tarwater "did not volitionally fail to do what was necessary for the test(s) to be performed" is legally erroneous as it relied on section 577.033, and as it viewed volitional refusal as requiring knowing refusal. Although the trial court found that Tarwater was highly intoxicated while in custody, that factual finding is of no import as a matter of law where the video evidence unequivocally establishes that Tarwater was physically able to expressly (and colorfully) vocalize his refusal to submit to a test.[6] It is legally irrelevant whether Tarwater's vocalized refusal to submit was knowing or remembered.

The Director's point on appeal is granted.

### There is no alternative basis for affirming the Judgment because there were reasonable grounds to believe Tarwater was driving in an intoxicated condition.

Tarwater argues that even if we conclude that the Director sustained its burden to establish that Tarwater refused to submit to a test, we should nonetheless affirm the Judgment because there were no reasonable grounds to believe that Tarwater was driving a motor vehicle while in an intoxicated condition, the second element the Director was required to establish pursuant to section 302.574.4(2)(a). We disagree.

---

[6]Tarwater argues in his brief that *Nace* "left open . . . whether a driver could be so impaired by intoxication that the driver is rendered incapable of . . . refusal." [Respondent's brief, p. 23] We need not address that issue, as Tarwater was not rendered incapable of refusing by his intoxication, but instead expressly vocalized his refusal to submit to a test, establishing as a matter of law that he had the physical ability to refuse to submit, and exercised that physical ability of his own volition.

14

The trial court found that "[t]here were reasonable grounds to believe [Tarwater] was driving a motor vehicle while in an intoxicated or drugged condition." We review a trial court's "probable cause determinations *de novo* under an abuse of discretion standard and give deference to the inferences the trial court made from the historical facts, including the trial court's credibility determinations." *White*, 321 S.W.3d at 310. The trial court made no factual findings regarding the historical facts that led to its conclusion that there were reasonable grounds to believe that Tarwater was driving while intoxicated. As such, we consider the facts "having been found in accordance with the result reached." *Stanton*, 616 S.W.3d at 407. (quoting Rule 73.01(c)).

Section 302.574.4(2)(a) requires a finding that "the officer who requested the [breath] test had reasonable grounds to believe that the [person] was driving while intoxicated," not that the person was *actually* driving while intoxicated. *Auck v. Dir. of Revenue*, 483 S.W.3d 440, 445 (Mo. App. E.D. 2016). "Reasonable grounds in a refusal case is virtually synonymous with probable cause." *Stanton*, 616 S.W.3d at 407 (quoting *Ayler v. Dir. of Revenue*, 439 S.W.3d 250, 254 (Mo. App. W.D. 2014)).

The determination of whether probable cause to arrest exists does not involve the application of a precise test. *Auck*, 483 S.W.3d at 444. Instead, "[p]robable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense." *Stanton*, 616 S.W.3d at 407 (quoting *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 621 (Mo. banc 2002)). The arresting officer need not have witnessed the person actually driving and need not know the person's condition at the time the person was driving to have probable

15

cause to believe that the person was driving while intoxicated. *Id.* Instead, the officer "may rely on circumstantial evidence to logically infer that a person was driving while intoxicated." *Id.* "An officer may also rely on information provided by witnesses to establish probable cause to believe a person was driving in an intoxicated condition." *Id.* (quoting *Gallagher v. Dir. of Revenue*, 604 S.W.3d 372, 377 (Mo. App. E.D. 2020)). "[I]t is well established that statements relayed to the arresting offer by eyewitnesses, law enforcement officers, and radio dispatch, which would be considered hearsay if offered for the truth of the matter asserted, are admissible to establish a basis for a belief that reasonable grounds to arrest for driving while intoxicated existed . . . ." *Auck*, 483 S.W.3d at 444.

The evidence at trial established that an accident occurred when both Tarwater and Marrant were traveling southbound on US Highway 69. Marrant's vehicle was in the left lane of the highway, directly next to Tarwater's vehicle in the right lane. Tarwater changed lanes and struck the right side of Marrant's vehicle. Officer Gartner's report noted the time of the accident as 11:28 a.m. Officer Gartner arrived on the scene at 11:35 a.m., and Corporal Childs arrived on the scene at 11:41 a.m.

Corporal Childs testified that he immediately spoke with Marrant who said that he observed Tarwater driving; that he did not observe Tarwater drinking any substance after the accident; and that Tarwater asked him to resolve the crash without involving the police.[7]

---

[7]Tarwater successfully objected to Corporal Childs's testimony about what Marrant told him on the basis of hearsay. However, the same information was contained in Corporal Childs's report which was admitted into evidence over objection as a part of Missouri Department of Revenue's certified records. Regardless, an officer may rely on information provided by witnesses to establish probable cause to believe a person was driving in an intoxicated condition, even if the information is inadmissible hearsay. *Auck*, 483 S.W.3d at 444.

16

Tarwater's request not to involve the police suggests a consciousness of guilt. *Cf. Hager v. Dir. of Revenue*, 284 S.W.3d 192, 197 (Mo. App. S.D. 2009) (noting that attempt to escape scene of accident "indicates consciousness of guilt"). Corporal Childs testified that he next spoke with Tarwater on the scene, and that Tarwater admitted to driving; admitted he had a few beers before the accident; had slurred speech; had a strong odor of intoxicating beverages; and had watery, bloodshot eyes. "The odor of alcohol, slurred speech, and glassy, bloodshot eyes are indicia of intoxication." *Stanton*, 616 S.W.3d at 408. Corporal Childs's observations were made within a short interval after Tarwater was known to have been driving. "[A] brief lapse of time between a defendant's driving and being seen in an intoxicated condition requires less exacting evidence of the defendant's intoxication." *State v. Davis*, 226 S.W.3d 927, 929 (Mo. App. W.D. 2007); s*ee also State v. Johnston*, 670 S.W.2d 552, 557 (Mo. App. S.D. 1984) (holding that an interval of less than thirty minutes between a defendant's known driving of a vehicle and the defendant being observed in an intoxicated condition supports a conviction of driving while intoxicated). Corporal Childs also testified that Tarwater refused to submit to requested field sobriety tests. While there is no requirement that a driver participate in field sobriety tests, "the refusal to take field sobriety tests constitutes evidence of intoxication in administrative license proceedings." *Turner v. Dir. of Revenue*, 609 S.W.3d 492, 498 (Mo. App. W.D. 2020).

Based on the aforesaid evidence, the trial court's conclusion that Corporal Childs had reasonable grounds to believe that Tarwater was driving while intoxicated was not an abuse of discretion. The trial court's additional finding that "[Tarwater] consumed a pint of vodka after [a] minor accident" is not inherently inconsistent with this conclusion, given

17

the short interval of time between the accident and Tarwater's reported consumption of vodka, and his observed condition on the scene. That is because "it often takes thirty minutes or more for alcohol that is imbibed to enter the bloodstream to such a degree as to produce intoxication." *Davis*, 226 S.W.3d at 929-30 (quotation omitted) (citing 2 DONALD H. NICHOLS & FLEM K. WHITED III, DRINKING/DRIVING LITIGATION: CRIMINAL AND CIVIL sections 14.3, 14.27 (2d ed. 1998)); *cf. State v. Milligan*, 516 S.W.2d 795, 799 (Mo. App. 1974) (upholding a conviction for driving while intoxicated where driver possessed strong indicia of intoxication on the scene and officers arrived within ten minutes of accident, even though defendant testified he consumed alcohol after the accident); *State v. Chester*, 445 S.W.2d 393, 397-98 (Mo. App. 1969) (conviction of driving while intoxicated affirmed where trooper arrived within fifteen minutes to visibly intoxicated defendant, though defendant testified he consumed alcohol after the accident and before the trooper arrived). It is noteworthy that both *Milligan* and *Chester* affirmed convictions for driving while intoxicated, despite some evidence of post-accident consumption of alcohol. The level of proof necessary to show probable cause for revocation of a driver's license for refusal to submit to a test is "substantially less" that that required to establish guilt beyond a reasonable doubt for the charge giving rise to a driver's arrest. *Hager,* 284 S.W.3d at 197.

Based on the evidence in this case, the Judgment cannot be affirmed on the alternative basis that there were no reasonable grounds to believe that Tarwater was driving a motor vehicle while in an intoxicated condition. Tarwater's contention to that effect, raised as a cross-appeal, is denied.

## Conclusion

The trial court's Judgment is reversed. This matter is remanded to the trial court with instructions to enter a judgment sustaining the revocation of Tarwater's driving privileges.

Cynthia L. Martin
_____
Cynthia L. Martin, Judge

All concur